PAUL C. WILSON, Judge.
The question presented in this case is whether the trial court can refuse to give a lesser included offense instruction requested by the defendant under section 556.046 when the lesser offense consists of a subset of the elements of the charged offense and the differential element (i.e., the element required for the charged offense but not for the lesser offense) is one on which the state bears the burden of proof. The answer, unequivocally, is no.
Here, a jury found Denford Jackson guilty of robbery in the first degree. The trial court declined to instruct the jury on second-degree robbery, as Jackson requested. A lesser included offense instruction was not required, the trial court held, because there was no basis in the evidence for a reasonable juror to determine that the victim did not reasonably believe that Jackson was holding a gun to her back throughout the robbery. This was error. A jury always can disbelieve all or any part of the evidence, just as it always may refuse to draw inferences from that evidence. Accordingly, in a criminal case, the trial court cannot refuse a defendant’s request for this type of “nested” lesser offense instruction based solely on its view of what evidence a reasonable juror must believe or what inferences a reasonable juror must draw.
Here, there was a basis in the evidence for the jury to find that the victim did not reasonably believe Jackson held a gun on her because the jury did not have to believe any of the evidence and did not have to infer that the victim believed anything, reasonably or otherwise. To put it simply, evidence never proves any element until the jury says it does. Accordingly, Jackson’s robbery conviction is vacated, and the case is remanded.

I. Facts

The jury found that Jackson entered a coffee shop on the morning of August 27, 2009, loitered in the store for several minutes, and then robbed the store’s cash register while holding a gun on the employee. The only people in the shop at the time of the robbery besides the employee were two customers, JS and SS. All three testified in the state’s case at trial.
Jackson entered the coffee shop through the dining area, walked toward the table where JS and SS were seated, and had a short conversation with SS. Neither JS nor SS noticed whether Jackson had a gun, though JS noticed that he kept his hand in his pocket all the time SS was speaking with him. After his brief conversation with SS, Jackson crossed over to the convenience store side of the shop where the cash register was located.
Neither JS nor SS noticed where Jackson went when he left the dining area, but they both soon noticed that he was standing close behind the employee at the cash register behind the counter. Again, neither could see whether Jackson had a gun, but they could see Jackson only from be *393 hind and from the waist up. Though SS thought they were counting money out of the cash register, she could not hear what either was saying. Neither customer saw Jackson leave or knew that anything untoward had occurred until the employee ran out of the kitchen saying she had been robbed.
The employee testified that she was in the kitchen when the incident began and did not notice Jackson until he came through the door behind the cash register counter. It was not unusual for customers to come into the kitchen looking for the dining area, so the employee approached Jackson to provide directions. When she got near him, he grabbed her arm and turned her around until she was heading back out the door toward the cash register.
I felt something in my back. Looked down and it was a gun, and he said— exactly I don’t know what it was. Basically, take me to the drawer_ I looked down and I could see it after I had looked down and he guided me forward. ... I saw it. Not a super long barrel but a six-inch barrel, silverish.... It was a revolver.
After the employee gave Jackson the money from the cash register, he took her back into the kitchen, made her lie down, patted her pockets looking for additional money, and then exited the shop through the door on the market side. As soon as she heard the door open and close, the employee yelled for help. She tried to telephone the police but had to have JS and SS help her because her hands were shaking too badly to dial her phone.
In addition to the foregoing testimony from the employee and the two customers, the state introduced videos of the incident taken from multiple angles by the coffee shop’s video surveillance system. These videos show Jackson entering the shop with one hand in his pocket, stopping for a minute or less near SS, and then moving into the empty market side of the shop. There, Jackson is seen looking around, taking something out of his pocket, examining it, and then entering the kitchen through the door behind the cash register counter. Seconds later, the employee is seen coming out of the kitchen with Jackson pressed firmly behind her. He is holding the employee with one hand, and his other hand is holding an object against the small of her back. Jackson’s head is close to, and along side of, the employee’s head so he can see where she is going. He directs her behind the counter and over to the cash register.
After the employee hands Jackson the money from the cash register, he and the employee are seen emerging from behind the counter. The employee turns right, away from the kitchen, but Jackson plainly expects her to turn left into the kitchen. As a result, for the only time in any of the videos, the two are separated by more than a couple of inches. Jackson is seen extending his arm fully to keep the object in his hand (which, at that point, is plainly visible) shoved firmly against the small of the employee’s back. Jackson again grabs the employee with his other hand, turns her toward the kitchen and closes up next to her again. There is no camera in the kitchen, but a camera in the dining area points through the partially open door to the kitchen. This captures Jackson reentering the kitchen with the employee, putting her on the kitchen floor, patting her pockets as though looking for money, and then leaving through the market area.
A police detective viewed these videos during his testimony as well as enlargements of individual frames from those videos. He testified that, in several shots, he could see that Jackson is holding a small, dark blue or black pistol to the employee’s back. In addition, when the video shows *394 Jackson taking something out of his pocket and inspecting it before first entering the kitchen to grab the employee, the detective testified that these gestures distinctly are those of someone checking a revolver to see if it is loaded. In other words, the detective testified that it looked to him as though Jackson was releasing the cylinder to swing it out and to the left, spinning the cylinder, and then reseating it in front of the hammer. Though the detective admitted on cross-examination that it was possible that “a person could pull something out that appears to be a gun to you on this blurry video but [it] could be a cell phone,” the detective did not admit it was possible that this video shows Jackson holding a cell phone and not a gun. Instead, the detective noted that people do not check to see if their cell phone is loaded right before committing a crime.
At the close of the evidence, Jackson’s counsel requested that the trial court instruct the jury on both second-degree robbery and first-degree robbery, the crime with which Jackson was charged. The only difference between these two instructions is that a conviction of first-degree robbery requires the jury to find the following element, but a conviction for second-degree robbery does not:
[T]hat in the course of taking the property, the defendant displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument.
Compare §§ 569.020 and 569.030, RSMo 2000.[1]
In support of his request that the jury be instructed on second-degree robbery, Jackson’s counsel argued:
[T]he argument is that in the video there is evidence to dispute or refute her testimony that there was, in fact, a gun; therefore, the jury could take that video evidence and not only disbelieve her that she believed there was a yun. They may believe that she was completely mistaken, and therefore it was not a reasonable belief. There was no testimony that there was a threat I had a gun or statements such as there is a gun. The only evidence that there was a gun is [the employee’s] testimony that she looked down for a split second and saw a gun. I think that the video refutes that. I think therefore we are entitled to an instruction on robbery in the second degree. [Emphasis added].
The trial court refused to instruct the jury on the lesser included offense of robbery in the second degree, stating “if I were to submit it here then I’d have to submit it every time there’s a robbery first brought, and I don’t think that that’s the law.” After viewing the videos and still photos of the crime during its deliberations, the jury found Jackson guilty of robbery in the first degree.[2]
Jackson moved for a new trial based, in part, on the trial court’s failure to instruct *395 on second-degree robbery. The court overruled this motion and sentenced Jackson to concurrent 30 and 10-year sentences for the robbery and armed criminal action convictions, respectively. Jackson timely filed this appeal, and this Court has jurisdiction over the matter. See Mo. Const, art. V, § 10. Jackson’s judgment of conviction on both counts is vacated, and the case is remanded.

II. Standard of review

This Court reviews de novo a trial court’s decision whether to give a requested jury instruction under section 556.046, RSMo Supp.2002,[3] and, if the statutory requirements for giving such an instruction are met, a failure to give a requested instruction is reversible error.[4] State v. Derenzy, 89 S.W.3d 472, 475 (Mo. banc 2002).

III. Analysis

Jackson concedes that the evidence in this case was sufficient to support the jury’s verdict that he was guilty of first-degree robbery. The employee testified that he held a gun on her, and, if the jury believed her testimony beyond a reasonable doubt, her testimony was sufficient to convict Jackson of first-degree robbery.
Rather than argue that the evidence was insufficient to convict him of first-degree robbery, Jackson claims that the evidence also was sufficient to convict him of second-degree robbery and, therefore, the trial court erred in refusing to instruct the jury on that lesser included crime. His claim is based solely on section 556.046, and he asserts no state or federal constitutional right to this lesser included offense instruction.[5] Accordingly, the analysis of Jackson’s claim begins with the statutory language:
The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense....
§ 556.046.2.
Although this Court generally relies only on the foregoing section 556.046.2 to *396 analyze claims involving lesser included offense instructions, see, e.g., State v. Pond, 131 S.W.3d 792, 794 (Mo. banc 2004);- State v. Thomas, 161 S.W.3d 377, 380 (Mo. banc 2005), this statute was amended in 2001 to include an entirely new subsection addressing this same subject:
The court shall be obligated .to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for , convicting the defendant of that particular included offense.
§ 556.046.3, RSMo.
Despite the addition of subsection 3 and its emphasis that a lesser included offense instruction must be justified by a “basis in the evidence,” § 556.046.3 (emphasis added), this,Court’s interpretation of section 556.046 did not change after 2001. See State v. Williams, 313 S.W.3d at 659 n. 5 (Mo. banc 2010) (quoting both subsections without noting any substantive difference between the two). Accordingly, the Court views these statutory provisions as interchangeable for purposes of whether the trial court is obligated to give an instruction on a first-level lesser included offense,[6] and they provide that a trial court is obligated to do so when each of the following requirements is met:
a. a party timely requests the instruction; [7]
b. there is a basis in the evidence for acquitting the defendant of the charged offense; and
c. there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested.
In this case, there is no dispute about the first requirement. And, because the elements of second-degree robbery are a subset of the elements of first-degree robbery, there is no dispute about the third requirement. The outcome of Jackson’s appeal, therefore, depends solely on the second requirement, i.e., whether there was a basis in the evidence for acquitting him of first-degree robbery.
For there to be a basis in the evidence to acquit Jackson of first-degree robbery and yet convict him of second-degree robbery, there must be a basis in the evidence for concluding that the state failed to prove the one element that separates the two crimes. Here, that differential ele *397 ment is whether the employee reasonably believed the object Jackson held against her back throughout the robbery was a gun. Accordingly, Jackson can only show that the trial court erred if there was a basis in the evidence to conclude that the employee had no such belief or that it was not reasonable.[8]
Jackson argues that a sufficient basis in the evidence is established by the surveillance videos and the discrepancy between the employee’s testimony that Jackson’s gun was “silverish” and the detective’s testimony that it was dark-blue or black. The state responds that, at most, this evidence disputes only whether Jackson actually held a gun on the employee, not whether she reasonably believed he was holding a gun on her. The state’s position is correct, but immaterial.
What matters here is not whether Jackson actually displayed or threatened to use a gun, but whether the object that Jackson plainly did display (and that Jackson plainly did use or threaten to use) appeared to the employee — subjectively, but reasonably — to be a gun. Defense counsel did not identify any evidence refuting (or offer any argument why the state’s evidence did not show) that the employee believed Jackson held a gun on her and that her belief was reasonable. Instead, he merely stated that the jury could choose to believe that the employee “was completely mistaken [about seeing a gun] and therefore it was not a reasonable belief.”
Even though the state’s logic is correct, its argument is immaterial. The essence of the state’s contention is that the jury’s right to disbelieve all or part of the state’s evidence cannot, by itself, constitute a “basis in the evidence” to acquit the defendant of the greater (or charged) crime for purposes of section 556.046. This Court disagrees. For support, the state quotes State v. Olson, 686 S.W.2d 818 (Mo. banc 1982):
The key phrase of that section is “a basis for a verdict”. It could be argued that the jury’s disbelief of the evidence necessary to establish an element of the greater offense is such a basis. However, such a construction would require an instruction on a lesser included offense in the vast majority of cases.... Even if the jury were to “disbelieve some of the evidence of the State, or decline to draw some or all of the permissible inferences, (this) does not entitle the defendant to an instruction otherwise unsupported by the evidence, on the issue of accidental homicide pursuant to § 559.050,....” Achter, 448 S.W.2d at 900. It hás consistently been held that an instruction on a lesser included offense is required only where there is evidence with probative value which could form the basis of an acquittal of the yreater offense and a conviction of the lesser included offense.
Id. at 321 (emphasis added). But Olson is no longer valid.
In State v. Santillan, 948 S.W.2d 574 (Mo. banc 1997), the state invoked Olson to support its argument that a lesser included offense instruction was not appropriate unless the defendant introduced affirmative evidence disputing the differential element. This Court held that a “defendant is not required to put on affirmative evidence” to justify the lesser included instruction and, “[t]o the extent that Olson ... may be *398 read to require a defendant to put on affirmative evidence as to the lack of an essential element of the higher offense, [it is] overruled.” Id. at 576.
Because this statement overruling Olson was qualified, the state continued to rely on Olson. In Pond, 131 S.W.3d 792, 794, the state cited several lower court opinions for its argument that “a defendant is not entitled to a lesser-offense instruction merely because a jury might disbelieve some of the state’s evidence.” Id. The decisions cited by the state, however, all relied on Olson. Accordingly, Pond responds: “This Court, however, overruled Olson, and its interpretation of section 556.046.2.” Id. (emphasis added) (citing Santillan, 948 S.W.2d at 576). Pond then explains why the state’s argument, and the statements in Olson on which that argument relies, are wrong:
A defendant is entitled to an instruction on any theory the evidence establishes. Hibler, 5 S.W.3d at 150. This Court leaves to the jury determining the credibility of witnesses, resolving conflicts in testimony, and weighing evidence. Rou-san v. State, 48 S.W.3d 576, 595 (Mo. banc 2001). A jury may accept part of a witness’s testimony, but disbelieve other parts. State v. Redmond, 937 S.W.2d 205, 209 (Mo. banc 1996). If the evidence supports differing conclusions, the judge must instruct on each. Hi-bler, 5 S.W.3d at 150.
Id. (emphasis added).
As in Santillan, however, Pond fails to fasten the lid down on Olson strongly enough. Because Pond states, “[L]ike Olson, the cases cited by the State are overruled, to the extent they require affirmative evidence from the defendant,” id., this last limiting phrase allowed the state to resurrect Olson again in Williams, 313 S.W.3d 656. In Williams, this Court again set forth — and again rejected — the state’s argument:
The State mistakenly relies on [three court of appeals decisions] to support its argument that a defendant is not entitled to a lesser included offense instruction merely because the jury miyht disbelieve some of the State’s evidence. These three cases rely on the previously overruled case of State v. Olson ... Olson was overruled by Santil-lan, 948 S.W.2d at 576 (“To the extent that Olson ... may be read to require a defendant to put on affirmative evidence as to the lack of an essential element of the higher offense, [it is] overruled.”). While the State acknowledges that after Santillan, the defendant was not required to put on affirmative evidence, it nonetheless argues that Williams was not entitled to a lesser included offense instruction because there was no affirmative evidence supporting his instruction. Therefore, the State contends, Williams was not entitled to the instruction on the sole basis that the jury miyht disbelieve some of the State’s evidence. This Court rejected that same argument in Pond, a post-Santillan case. Here, as in Pond, the State relies on pre-Santillan cases and argues that “a defendant is not entitled to a lesser included offense instruction merely because a jury might disbelieve some of the State’s evidence.” 131 S.W.3d at 794. In Pond, this Court rejected the State’s argument, stating, “A defendant is entitled to an instruction on any theory the evidence establishes.” Id. at 794.
Id. at 660-61 (emphasis added).
Even though Williams flatly rejects the state’s argument and expressly rejects the state’s continued reliance on any remnants of Olson, it again fails to fasten the lid on Olson tight enough to prevent the state *399 from continuing to make this twice-rejected argument. In Williams — as in Pond— the Court merely referenced that Santil-lan overruled Olson to the extent that it requires a defendant to put on affirmative evidence as to the lack of the differential element. Id. at 660. Neither Pond nor Williams expressly overrules the remainder of Olson on which the state repeatedly — but unsuccessfully — relies. The Court now does so.
The state argues that Jackson was not entitled to an instruction on the lesser included offense of second-degree robbery solely because the jury could refuse to believe that the employee saw a gun in Jackson’s hand or reasonably believed it was a gun that he was holding against her back throughout the robbery. Even though Williams and Pond expressly rejected such an argument, the state continues to assert it and continues to claim that it is supported by the parts of Olson it claims survived Santillan.
Accordingly, because the state continues to rely on the part of Olson that survived Santillan to assert an argument that this Court has twice rejected expressly, and because Williams and Pond continue to suggest that some part of Olson remains good law despite explicitly rejecting all of its reasoning, the Court again holds that the jury’s right to disbelieve all or any part of the evidence and its right to refuse to draw needed inferences is a sufficient basis in the evidence — by itself — for a jury to conclude that the state has failed to prove the differential element. To the extent Olson suggests anything to the contrary, it is overruled.
The holdings of Pond and Williams should have made lesser included offense instructions nearly universal, at least when the differential element is one for which the state bears the burden of proof. All decisions as to what evidence the jury must believe and what inferences the jury must draw are left to the jury, not to judges deciding what reasonable jurors must and must not do.[9] Pond, 131 S.W.3d at 794; Williams, 313 S.W.3d at 660. The Court now reaffirms those holdings because, as long as the jury has the right to disbelieve all or any part of the evidence, and refuse to draw needed inferences, section 556.046 cannot be read any other way.[10] See Pond, 131 S.W.3d at 794 (“defendant is entitled to an instruction on any theory the evidence establishes” and “if the evidence supports differing conclusions, the judge must instruct on each”); Williams, 313 S.W.3d at 659-60 (“jury may accept part of a witness’s testimony, but disbelieve other parts”) (quoting MAI-CR 3d 304.11.G). “Doubts concerning whether to instruct on a lesser included offense should be resolved in favor of including the instruction, leaving it to the jury to decide.” Derenzy, 89 S.W.3d at 474-75.
Here, the differential element is whether the employee believed (subjectively, but reasonably) that the object Jackson held against her back throughout the robbery — and that he used or threatened to use to force her to do what he wanted— was a gun. No matter how strong, air *400 tight, inescapable, or even absolutely certain the evidence and inferences in support of the differential element may seem to judges and lawyers, no evidence ever proves an element of a criminal case until all 12 jurors believe it, and no inference ever is drawn in a criminal case until all 12 jurors draw it. Accordingly, the evidence supported an instruction on robbery in the second degree.[11]
The temptation to violate this principle and refuse to instruct down — though plainly wrong — can be almost overpowering in some cases, especially when the evidence is so strong and the inferences are so obvious that giving a lesser included offense instruction seems almost to beg for jury nullification or compromise verdicts. A sure sign that a judge or court is about to yield to this temptation is a reference to what a “reasonable juror” in a criminal case must or must not find. For example, in State v. Mease, 842 S.W.2d 98 (Mo. banc 1992), the Court surveyed the state’s extensive evidence of deliberation and held that “[n]o rational fact finder could conclude that the defendant committed this homicide but that he did not deliberate on the killing.” Id. at 111.[12]
The temptation to deprive the jury of the right to disbelieve all or any part of the evidence, as this Court did in Mease, is neither new nor is it a weakness peculiar to this Court. Even luminaries of the judicial heavens have fallen prey to this temptation on occasion. For example, Justice Holmes once wrote:
The judge cannot direct a verdict [in a criminal case] it is true, and the jury has the power to bring in a verdict in the teeth of both law and facts. But the judge always has the right and duty to tell them what the law is upon this or that state of facts that may be found, ... and when there is no dispute he may say so although there has been no formal agreement. Perhaps there was a regrettable peremptoriness of tone — but the jury were allowed the technical right, if it can be called so, to decide against the law and the facts — and that is all there was left for them after the defendant and his witnesses took the *401 stand. If the defendant suffered any wrong it was purely formal since, as we have said, on the facts admitted there was no doubt of his guilt.
Homing v. D.C., 254 U.S. 135, 138-39, 41 S.Ct. 53, 65 L.Ed. 185 (1920). This uncharacteristic usurpation of the jury’s role was noted at the time, id. at 139, 41 S.Ct. 53 (Brandéis, J., dissenting) (noting that the trial court’s statement constituted a directed verdict in a criminal case and arguing that there is nothing “technical” about the jury’s right to find the facts because it is only that finding that gives the government any right or power to punish), and history has adjudged it “an unfortunate anomaly in light of subsequent cases.” United States v. Gaudin, 515 U.S. 506, 520, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).
It is the “universally accepted law of this state that a court in the trial of a criminal prosecution cannot direct the jury to return a verdict of guilty[.]” State v. McNamara, 212 Mo. 150, 110 S.W. 1067, 1071-72 (1908).
We have held that in criminal cases “no court in Missouri has the power or right to direct a verdict of guilty in the face of our constitutional guaranty of trial by jury, our statute forbidding the judge to sum up or comment on the evidence.” In State v. Buck, supra, 120 Mo. [479,] 25 S.W. 573, 577 [(1984)], the court said: “The presumption of innocence with which defendant is clothed, and never which shifts, rests with him throughout, and, notwithstanding the prima facie case made out by the state, it must still go further. A prima facie case will not warrant a conviction.’ ”
State v. Shelby, 333 Mo. 1036, 64 S.W.2d 269, 275 (1933) (emphasis added, citations omitted).
When a court decides what instructions to give the jury in a criminal case under section 556.046 based on what a reasonable juror must and must not find, or what a reasonable juror must and must not infer, it tacks far too close to the forbidden waters of directing a verdict in a criminal case. Here, the trial court concluded — and the state would have this Court hold — that the evidence was so compelling that the jury must believe that the employee saw something in Jackson’s hand and must infer that she reasonably believed it was a gun. The effect of such a ruling, however, is the same as a directed verdict on the differential element.
In other words, there is no difference between: (a) rejecting a lesser included offense instruction on second-degree robbery and (b) giving only a second-degree robbery instruction but telling the jury that if it finds all of the elements of second-degree robbery, it must find Jackson guilty of ñrst-degree robbery. If the latter is prohibited, so must the former be. Santillan, Pond, and Williams combine to hold that the jury’s right to disbelieve all or any part of the evidence, and its right to refuse to draw any needed inference, is a sufficient basis in the evidence to justify giving any lesser included offense instruction when the offenses are separated only by one differential element for which the state bears the burden of proof. The Court reaffirms those holdings here.
Santillan holds that the defendant is not required to put on affirmative evidence to support the lesser offense or refute the greater. Pond and Williams hold that there is no requirement for such affirmative evidence regardless of who adduces it. Now, the Court holds expressly what Pond and Williams only may have implied: a defendant not only does not need to introduce affirmative evidence, he does not have to “cast doubt” over the state’s evidence via cross-examination or explain to the judge or jury precisely how or why the *402 jury can disbelieve that evidence and so acquit him of the greater offense and convict him of the lesser. To the extent Olson or any other case suggests otherwise, it no longer should be followed.
Finally, the Court does not accept the argument in the separate opinions that this holding does unnecessary violence to the language or intent of section 556.046. Even though the effect of this decision likely will be that lesser included offense instructions will be given virtually every time they are requested (and even though trial courts likely will give such instructions even when not requested simply to avoid the possibility of post-conviction claims under McNeal), these particular clothes were missing from the emperor’s wardrobe long before this case. This holding was implied (at least) in Pond, and it was stated expressly in Williams. Accordingly, the Court’s decision in this case merely acknowledges what the rest of the villagers already have seen..
As noted at that outset, this decision is based solely on the language of section 556.046. But this statute must be applied in the context of the constitutional imperatives of the presumption of innocence and the right to a trial by jury. The holding in this case is faithful to the language of section 556.046 in that context. Unless there is a constitutional right to a lesser included offense instruction in non-capital cases, a question that the Court does not address here, statutory language eliminating such instructions in all such cases would seem to pose no drafting difficulty. But, to the extent that the purpose of section 556.046 is to make a lesser included offense instruction available in one first-degree robbery case but not another based on how strong or weak the-trial judge believes the state’s evidence to be, the language presently chosen to accomplish that goal fails for the reasons (and to the extent) set forth above. There simply is no way for this Court to construe the phrases “a basis in the evidence to acquit the defendant,” § 556.046.3, or “a basis for a verdict acquitting the defendant,” § 556.046.2, to achieve such an end without undermining the fundamental values embodied in the presumption of innocence and the right to a jury trial. Accordingly, until some other language is employed, the construction given here (and in Williams) to subsections 2 and 3 of section 556.046 is the best — and only — construction reasonably available.

IV. The Separate Opinions

The divide between the Court’s holding and the positions taken in the separate opinions is narrow and easily stated: If the defendant requests that the jury be instructed on a lesser included offense consisting of all but one of the elements required for the greater offense, is the trial court allowed to refuse to give that instruction solely because it determines that no reasonable juror could refuse to find that the differential element had been proved beyond a reasonable doubt? The answer is no. Unless waived, the right to trial by jury means that the jury — and only , the jury — will decide what the evidence does and does not prove beyond a reasonable doubt.

A. The Harm

Before debating the merits of this holding further, however, it seems both fair and reasonable to ask: Where is the harm? Even if the evidence is such that every reasonable juror must find the differential element proved beyond a reasonable doubt, where is the harm in giving the defendant the lesser included offense instruction he requests?
To isolate this harm, assume: (1) a defendant is charged with a crime consisting of three elements; (2) the defendant re *403 quests an instruction on a lesser included offense consisting only of the first two elements; (3) the jury will find that the first two elements have been proved; and (4) the evidence is such that every reasonable juror must find the third element has been proved.
If the jury in this case is “reasonable,” i.e., if it finds element C proved as every reasonable juror must, it will convict the defendant of the greater offense whether the lesser included offense instruction is given or not. Therefore, a lesser included offense instruction will make a difference in this case only if the jury is “unreasonable” regarding the proof of element C, yet willing to convict the defendant of the lesser offense if given that option. This is the supposed harm that the separate opinions seek to prevent. But the alternative is unacceptable. It forces an unreasonable jury either:
A) to acquit Defendant of the greater offense, or
B) to convict him of a crime it believes (unreasonably, but genuinely) Defendant did not commit.
The Court perceives no harm in giving a lesser included offense instruction that allows the jury to convict a defendant of an offense that the evidence proves he committed and that the jury believes he committed. Instead, the harm comes from a rule that either: (A) allows the defendant to go free despite evidence that proves he committed a crime the jury was not allowed to consider, or (B) sends him to prison for a crime that the jury genuinely (though perhaps unreasonably) believes he did not commit.
That is harm enough, but it is not the only harm caused by the approach that the separate opinions champion. The question of whether the trial court will give a lesser included offense instruction cannot be answered until the very end of the trial, when the trial court sifts and weighs the evidence to determine which elements (if any) a reasonable juror must find. This means that the defendant must prepare and try his case never knowing for sure whether the trial court will give the lesser included offense instruction he wants. By acknowledging the effect of its prior decisions, the Court’s holding in this case creates certainty that will benefit defendants and, ultimately, the state and the trial court as well.

B. The Arguments

The separate opinions want to have their cake and eat it too. This Court has held that a “defendant is not required to put on affirmative evidence” to justify a requested lesser included instruction, Santillan, 948 S.W.2d at 576, and the jury “may believe or disbelieve all, part, or none of the testimony of any witness.” Williams, 313 S.W.3d at 660.[13] The separate opinions are willing to follow these principles, but only to a point.
For example, the position taken in the separate opinions acknowledge that a “defendant has no obligation to put on affirmative evidence” to justify a requested lesser included instruction, but would accept the state’s proposed limitation that the defendant still must put the differential element “in dispute” by impeaching the state’s witnesses on that element, by making a “credible” argument that the *404 state’s proof of that element need not be believed, or by otherwise creating a “real question” as to whether this differential element was proved beyond a reasonable doubt. This argument was rejected by this Court in Pond and Williams.
By the same token, the Court has rejected the idea that the jury “may believe or disbelieve all, part, or none of the testimony of any witness,” but only if it believes all of the evidence that a reasonable juror must believe and does not believe any of the evidence that a reasonable juror must disbelieve. The question of whether the evidence is sufficient (i.e., whether a jury may find guilt beyond a reasonable doubt) is a proper question for trial and appellate courts, but the question of what the jury must find has no place in a criminal trial or appeal.
This Court serves the criminal justice system best when it says what it means and means what it says. Accordingly, the Court should not continue to articulate the foregoing principles in Santillan and Williams on the one hand and, on the other, continue to suggest that a requested lesser included offense instruction need not be given if the trial court finds that all reasonable jurors must find that the differential element was proved. It is unfair to the trial court that makes its decision on the basis of the latter, only to be reversed on the basis of the former. And it is unfair to the defendant who must go through a second trial just to get the instructions he should have gotten in the first.
For these reasons, the Court’s holding acknowledges what most of the villagers already have seen, i.e., that the emperor’s wardrobe is more imaginary than real. When a defendant requests an instruction for a lesser included offense that consists of a subset of the elements of the charged offense, that instruction must be given. This is not a new holding but, because the state persists in insisting that the emperor is well-clothed, the Court here underscores its holdings in Pond and Williams.

C. No Basis to Convict of the Lesser Offense

The implication in the state’s arguments and the separate opinions is that the Court’s holding will give the jury an opportunity to convict the defendant of a crime for which there is no basis in the record to find him guilty. This is incorrect.
When dealing with “nested” lesser included offenses (i.e., those comprised of a subset of the elements of the charged offense), “it is impossible to commit the greater without necessarily committiny the lesser.” Derenzy, 89 S.W.Bd 472, 474 (Mo. banc 2002) (emphasis added). See also State v. Harris, 620 S.W.2d 349, 355 (Mo. banc 1981) (“it is impossible to commit the greater [offense] without first committing the lesser”). For example, second-degree robbery requires the state to prove beyond a reasonable doubt that the defendant took the victim’s property by force. First-degree robbery requires proof of those same elements and proof beyond a reasonable doubt of the differential element that the victim reasonably believed the defendant was using or threatening to use a weapon. By definition, therefore, if the evidence in a specific case is sufficient to allow a reasonable juror to find the defendant guilty of robbery first, that evidence also must be sufficient to allow a reasonable juror to find the defendant guilty of robbery second.
The error in the contention that the Court’s holding allows a jury to convict a defendant of a lesser offense that is not supported by the evidence can result only from a concatenation of three logical missteps: (1) it treats a sufficiency analysis (i.e., determining what a reasonable juror *405 may find) like a directed verdict analysis (i.e., determining what a reasonable juror must find); (2) it makes the lack of the differential element in the lesser offense into an element of that offense (e.g., if “weapon” is an element of robbery first, then “no weapon” must be an element of robbery second); and (B) it converts this new element into an affirmative defense. Only by adding all three of these together is it possible to reach the erroneous conclusion that giving a lesser included offense instruction allows the jury to convict the defendant of a crime for which there is no basis in the record to find him guilty.
Here, there is sufficient evidence for a reasonable juror to find that Jackson stole the victim’s property by force (i.e., that he committed second-degree robbery), even if the video confirmed beyond any question that he was carrying a gun. In fact, this would still be true even if the video showed — and four unimpeachable eyewitnesses confirmed — that Jackson was carrying a bazooka and a machete. This is because whether the defendant was or was not armed is irrelevant for purpose of the elements of second-degree robbery.
The same is true in the companion case, Pierce. No matter how compelling the evidence in Pierce was — or was not — concerning whether the cocaine base in the defendant’s possession weighed more than two — or 2,000 — grams, the evidence in that case had to be sufficient to convict Pierce of possession (for which weight is not an element) because the evidence was sufficient to prove second-degree trafficking (for which proof that the substance weighed two grams or more is required). Pierce, 433 S.W.3d at 432. In other words, the jury did not have to find that the defendant possessed less than two grams of that substance in order to convict him of the “nested” lesser offense of possession; it could convict him of that crime without deciding (or even considering) how much the substance weighed. By the same token, the jury in this case did not have to find that Jackson was unarmed in order to convict him of the “nested” lesser offense of second-degree robbery; it could convict him of that crime without ever considering or deciding that question. By definition, therefore, a “nested” lesser offense omits — it does not negate — the differential element.
Accordingly, the holding in this case does not allow a jury to convict a defendant of a crime for which he has not been proven guilty. Any evidence that is sufficient to prove the elements of the charged offense must necessarily be sufficient to prove a crime that is comprised of a subset of those same elements, i.e., a “nested” lesser offense.

D. Putting the Differential Element “In Dispute”

Though the state concedes that, under Santillan, the defendant cannot be denied a lesser included offense instruction on the basis that he failed to introduce affirmative evidence negating the differential element, the separate opinions would replace this unlawful — but at least workable — standard with an amorphous standard that is both unlawful and unworkable. The Court rejects the assertion that it should hold that a defendant is not entitled to a lesser included offense instruction unless and until he puts the differential element “in dispute,” especially as the proponents of this approach fail to provide even vague guidance as to how a defendant can meet this new requirement. Moreover, the Court refuses any approach that would borrow from civil cases on summary judgments or directed verdicts to determine when a criminal defendant has done enough to put an element on which the *406 state bears the burden of proof “in dispute.”
This Court has long been faithful to the basic principle that entering a plea of “not guilty” is all that a defendant needs to do to put the government to its proof on every element of the crime. State v. Moore, 435 S.W.2d 8, 11-12 (Mo. banc 1968) (“It must be remembered, however, that the defendant here entered a plea of not guilty which puts in issue all facts constituting” the crime and the defendant’s guilt); State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, 83 (1933) (“Defendant’s plea of ‘not guilty’ put in issue every allegation of the indictment, and, if the prosecutor had failed to prove the killing, defendant would have been entitled to an acquittal.”) (quoting State v. Winter, 72 Iowa 627, 34 N.W. 475, 478 (1887)).
As explained herein, any attempt to narrow this principle so that a plea of “not guilty” only puts “in dispute” those elements that the trial court (or an appellate court on de novo review) believes reasonable jurors can disagree about comes dangerously close to denying the defendant the fair trial to which he is entitled under the state and federal constitutions.[14]

E. Federal Cases

This case is about the application of a Missouri statute to Missouri prosecutions in Missouri courts. Even so, the separate opinions cite to federal court decisions that supposedly preclude the Court’s holding. Yet none of these cases reject the principles underlying the Court’s holding.
Some of the federal cases relied upon are constitutional reviews of state court prosecutions in which the state’s law governing lesser included offense instructions bear no resemblance to section 556.046.2. For example, in Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Alabama capital murder statute prohibited the trial court from giving a lesser included offense instruction in any case. The Supreme Court rejected this attempt to force the jury to choose between convicting the defendant of the charged crime (with its mandatory penalty) or allowing the defendant to walk free. Id. at 634,100 S.Ct. 2382 (noting lesser included offense instructions are a vital party of “ensur[ing] that the jury will accord the defendant the full benefit of the reasonable-doubt standard”).[15] This is the principle that this Court’s holding vindicates in this case.[16]
*407 In Roberts v. Louisiana, 428 U.S. 325, 333, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) (plurality opinion), the Court declared Louisiana’s first-degree murder statute unconstitutional because it mandated a death sentence for anyone found guilty of any of five categories of killings. In reaching this conclusion, the Court rejected the state’s argument that the legislature can overcome the “constitutional vice of mandatory death sentence statutes” simply by requiring the trial court in every case to instruct the jury on all lesser included forms of homicide. The Court rejected “such an approach [because it] makes the jurors’ power to avoid the death penalty dependent on their willingness to accept this invitation to disregard the trial judge’s instructions” to find the defendant guilty of a lesser included offense even though it believed beyond a reasonable doubt that the defendant committed all of the elements of the charged offense. Id. at 335, 96 S.Ct. 3001.
The other cited federal cases are even less relevant. Unlike Missouri practice under section 554.046.2, federal court decisions regarding lesser included offense instructions are not persuasive because their practice is not the result of a statute (let alone one similar to section 554.046.2). Instead, it is governed entirely by decisional law. See Fed. R. Crim. Proe. Rule 31(c) (defining lesser included offenses without addressing when instructions of such must be given).
For example, the separate opinions rely heavily on language from Keeble v. United States, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), and Sansone v. United States, 380 U.S. 343, 350, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). The former does not help their argument, however, and the latter actually hurts it. In Keeble, the Supreme Court rejected the government’s argument that Congress intended to deprive defendants of the general rule in federal courts (i.e., allowing lesser included offense instructions when supported by the evidence) in prosecutions on Indian lands, but it did not address whether the defendant was entitled to such an instruction. Keeble, 412 U.S. at 213, 93 S.Ct. 1993 (noting that any attempt to preclude the availability of a lesser included offense instruction in an entire category of cases would be constitutionally suspect).
In Sansone, the Supreme Court returned to its rationale that overuse of lesser included offense instructions could permit juries to “pick between the felony and the misdemeanor so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge.” Sansone, 380 U.S. at 350, 85 S.Ct. 1004. This is significant here because it shows that the distrust of juries inherent in the “rational juror” threshold urged by the separate opinions is far more appropriate in federal courts where sentencing is determined solely by the judge, than it is in Missouri where the legislature preserves a significant role for the jury in sentencing first-time offenders.
For these reasons, the quoted federal cases do not provide a sufficient basis for the Court to close its eyes to the meaning of its prior holdings in Santillan, Pond, and Williams. Moreover, the use of these federal cases leaves the impression that federal courts are ready and willing to use this issue to usurp the jury’s role. If true, this still would not justify this Court in *408 doing the same. But, more important, this is not a true portrait of these issues in the federal courts.
The Supreme Court has stated repeatedly that criminal guilt is to be determined by the jury, not the judge, and that a court cannot usurp the jury’s role simply because it finds that the evidence establishes an element beyond dispute:
[I]n a jury trial the primary finders of fact are the jurors. Their overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelmingly the evidence may point in that direction. The trial judge is thereby barred from attempting to override or interfere with the jurors’ independent judyment in a manner contrary to the interests of the accused.
United States v. Martin Linen Supply Co., 430 U.S. 564, 572-73, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (emphasis added) (citations omitted). See also United Brotherhood of Carpenters & Joiners of Am. v. United States, 330 U.S. 395, 410, 67 S.Ct. 775, 91 L.Ed. 973 (1947) (“No matter how clear the evidence, [defendants] are entitled to have the jury instructed in accordance with the standards which Congress has prescribed. To repeat, guilt is determined by the jury, not the court.”) (emphasis added).
The Supreme Court explained with great force and eloquence why the jury’s role extends to guilt and innocence and is not limited simply to resolving disputed questions of fact:
The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. ... Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.... Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power — a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges. Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence.
Duncan v. State of Louisiana, 391 U.S. 145, 155-56, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (emphasis added).
The approach championed in the separate opinions violates these principles because it restricts the jury’s decision-making only to questions that a court believes are fairly debatable among “reasonable jurors.” Federal courts do not condone this, even when the evidence is overwhelming or uncontradicted.
The presumption of innocence to which appellant was entitled demanded that all factual elements of the government’s case be submitted to the jury. It is immaterial that the government’s evidence as to the actual theft was uncon-tradicted. The acceptance of such evidence and the credibility of witnesses is for the jury, even though to the court the only possible reasonable result is the acceptance and belief of the government’s evidence. A partial direction of the verdict occurs when the court *409 determines an essential fact, and this denies the appellant trial by jury.
United States v. Manuszak, 234 F.2d 421, 424-25 (3d Cir.1956) (emphasis added). See also United States v. Muse, 83 F.3d 672, 679-80 (4th Cir.1996) (“Although a fact stipulation may have the effect of providing proof beyond a reasonable doubt of the existence of the facts that make up an element, a conviction is not valid unless a jury considers the stipulation and returns a guilty verdict based on its finding that the government proved the elements of the crime beyond a reasonable doubt.... [and the] court may not by-pass the jury and enter its own finding that the element has been established.”).
It is not for this Court to tell the federal courts that these essential principles cannot be reconciled with a “reasonable juror” gateway to a defendant’s request for a lesser included instruction on a “nested” lesser offense. But the Court can — and here does — abandon such inconsistency in its own practice.

F. Model Penal Code Statutes and Cases

Even less persuasive than these federal court cases is the reliance placed on how the model penal code addresses the use of lesser included offense instructions in states that have adopted that approach. The model penal code provided:
The Court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.
ALI Model Penal Code at § 1.07(5) (1962) (emphasis added).
Missouri explicitly rejected the model penal code on this point. Section 556.046.2 predates the model penal code and requires only “a basis,” not “a rational basis.” By refusing to change section 556.046.2 when it adopted much of the remainder of the model penal code, the legislature rejected this “rational basis” approach. See Comments to Missouri Criminal Code, p. 1-5, § 1.090 (1973). This Court cannot amend the statute now to adopt the model penal code approach that the legislature considered and rejected.
For all these reasons, the separate opinions fail to justify an approach that authorizes (if not actually encourages) courts to invade the jury’s province and usurp its role as the final arbiter of a defendant’s guilt. Presented as a defense of the status quo, their approach seeks to avoid the unavoidable consequences of the principles that this Court recognized and protected in Santillan, Pond, and Williams. As a result, that approach would be a backward step, and the Court’s holding in this case moves Missouri practice toward greater certainty, fewer retrials, and renewed faith in the jury system.

V. Conclusion

For the reasons stated above, Jackson’s judgment of conviction is vacated both as to the first-degree robbery count and, because the jury’s verdict on the armed criminal action count was predicated on its verdict regarding first-degree robbery, the armed criminal action count as well.[17] The case is remanded.
RUSSELL, C.J., FISCHER and TEITELMAN, JJ., concur; STITH, J., concurs in part and dissents in part in *410 separate opinion filed;
BRECKENRIDGE, J., concurs in opinion of STITH, J.; DRAPER, J., dissents in separate opinion filed; STITH, J., concurs in opinion of DRAPER, J.

. To be clear, this element requires the jury to find beyond a reasonable doubt that the defendant objectively displayed or threatened to use an object during the robbery. If so, the jury also must find that the object appeared to the victim-subjectively, but reasonably-to be a gun or other deadly weapon or dangerous instrument.

. Jackson also was charged and found guilty of armed criminal action. The instruction for this count stated that the jury could convict him of armed criminal action only if it found beyond a reasonable doubt that Jackson committed robbery in the first degree and that he "committed that offense by or with or through the use or assistance or aid of a deadly weapon.” Based on the jury's verdicts, therefore, the jury not only found beyond a reasonable doubt that the object in Jackson’s hand reasonably appeared to the employee to be a gun, the jury found beyond a reasonable doubt that the object in Jackson’s hand was a gun.

. Statutory references are to the version of the statute in effect on August 27, 2009, when this crime occurred. No changes to the procedural statutes, e.g., § 556.046, occurred after that date.

. An appellate court will not remand for a new trial on the basis of an error that did not violate a defendant’s constitutional rights unless "there is a reasonable probability that the trial court's error affected the outcome of the trial.” State v. Forrest, 183 S.W.3d 218, 224 (Mo. banc 2006). Here, any such prejudice from the refusal to instruct the jury on second-degree robbery seems logically inconsistent with the fact, discussed above, that the jury found both that the object in Jackson’s hand reasonably appeared to be a gun and that he actually used a gun. The Court need not reconcile these, however, because prejudice is presumed when a trial court fails to give a requested lesser included offense instruction that is supported by the evidence. State v. Redmond, 937 S.W.2d 205, 210 (Mo. banc 1996) (defendant "is entitled to a new trial before a properly instructed jury”).

.This decision not to raise a constitutional claim at trial may have reflected the "widely held view that failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question!.]” Trujillo v. Sullivan, 815 F.2d 597, 607 (10th Cir.1987) (citing Easter v. Estelle, 609 F.2d 756, 758 (5th Cir.1980); James v. Reese, 546 F.2d 325, 327 (9th Cir.1976); DeBerry v. Wolff, 513 F.2d 1336, 1339 (8th Cir.1975)). Jackson attempts to assert constitutional claims for the first time in his point relied on in this Court. Not only were the claims not raised at the first opportunity, but Jackson also failed to develop them in the argument portion of his brief. Accordingly, these arguments are not properly before the Court.

. Another effect of the 2001 amendments to section 556.046 was to clarify the analysis when a party asks for multiple lesser included offense instructions. In State v. Hibler, 5 S.W.3d 147, 150 (Mo. banc 1999), the state argued that section 556.046.2 did not allow this. The 2001 amendments added section 556.046.3 (which avoids the phrase "charged offense” that was the basis for the state's argument in Hibler), and changed the definition of "charged offense” in section 556.046.2 to include any lesser included offense for which an instruction is required. As a result, a trial court- may be obligated to give multiple lesser included offense instructions because the first-level included offense is both a "charged offense” under section 556.046.2 and a "higher included offense” under section 556.046.3.

. Even when the defendant does not request a lesser included offense instruction, this Court recently held that a defendant who was convicted of a greater offense states a valid claim for post-conviction relief under Rule 29.15 by alleging that counsel’s failure to request the instruction resulted from "inadvertence” rather than reasonable trial strategy. McNeal v. State, 412 S.W.3d 886, 889-90 (Mo. banc 2013). Because there was no record made during trial that defense counsel's decision not to request a lesser included offense instruction was a deliberate (and objectively reasonable) strategic choice, the Court held that the defendant was entitled to an eviden-tiary hearing and a chance to prove his claim and have the conviction set aside. Id. at 891.

. By the same token, Jackson’s request that the trial court give a lesser included instruction on stealing depended on there being a basis in the evidence to conclude that the state failed to prove both: (a) that the employee reasonably believed that the object Jackson was using was a gun, and (b) that Jackson used some degree of force (no matter how slight) during the crime.

. Williams quotes prior opinions that purport to decide what instructions to give based on what the court thinks a reasonable jury can and cannot refuse to believe. Williams, 313 S.W.3d at 660. The Court rejected that approach, however, by holding that the jury can refuse to believe any part of the state's evidence. Id. at 661. The two approaches are antithetical and, as explained herein, Williams wisely rejected the former in favor of the latter.

. The Court reaches this same conclusion in the companion case, State v. Pierce, 433 S.W.3d 424, 2014 WL 2866292 (Mo. banc 2014) (No. SC93321).

. In Pierce, 433 S.W.3d 424, the Court applies this holding to a case in which the defendant was charged with second-degree trafficking and the trial court refused the defendant’s request to instruct on the “nested” lesser offense of possession. The differential element, i.e., the element required for the trafficking charge but not for possession, is that the defendant possessed cocaine base weighing more than two grams. No matter how compelling (or even uncontested) the evidence may be on this element, it is for the jury — and only the jury — to decide whether the state proved that element beyond a reasonable doubt. Accordingly, it was error in Pierce for the trial court to refuse to instruct the jury on possession on the ground that a reasonable jury must believe this evidence and must find that differential element.

. Nor is Mease the only time that this Court has held what a jury in a criminal case was not allowed to find. See, e.g., State v. Murray, 744 S.W.2d 762, 774 (Mo. banc 1988) (defendant's theory of second-degree murder contradicted by the state's evidence); State v. Amerson, 518 S.W.2d 29, 33 (Mo.1975) (second-degree murder instruction not required when victim was killed while sitting peacefully by the street and defense was that defendant was not the killer); State v. Parker, 509 S.W.2d 67, 71 (Mo.1974) (second-degree murder instruction not required when victims were forced to lie on floor and then were shot and defense was that defendant was not the killer); State v. Crow, 486 S.W.2d 248, 254-55 (Mo. 1972) (second-degree murder instruction not required when victim was bound and strangled and defense was that defendant was not killer); State v. Holland, 354 Mo. 527, 543, 189 S.W.2d 989, 998 (1945) (second-degree murder instruction not required when victims' headless bodies, which had two or three shotgun wounds each, were found in a lake and defense was that defendant was not killer).

. The separate opinions rely on the fact that Williams quoted "reasonable juror” language and argue that the evidence there was such that reasonable jurors could disagree about the differential element. Whether the Court could have come to such a conclusion is debatable, but what is clear is that the Court -did not do so. The basis for the holding in Williams is that the jury is entitled to believe all, part or none of the evidence, not that such belief or disbelief was (or was not) reasonable.

. Nor is there any basis for claiming that the Court’s holding in this case imperils the defendant’s state or federal due process rights. As noted from the outset, this case and the Court's holding are limited to trials in which the defendant timely requests an instruction on a "nested” lesser included offense. Obviously, there can be no due process violation in granting a defendant’s own request. Using constitutional precedents meant to protect defendants cannot justify a new rule that requires a defendant to do more than plead not guilty before giving him the full benefit of the presumption of innocence and imposing on the state the full burden of persuading the jury that it has proved each element beyond a reasonable doubt.

. In Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), the Court denied habeas relief to a state prisoner on the grounds that Beck did not recognize a general due process right to lesser included offense instructions in state court and that relief was not merited when, under state law, the defendant would not have been entitled to such an instruction even in a non-capital case. Id., at 612, 102 S.Ct. 2049. But see Keeble v. United States, 412 U.S. 205, 213, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973) (noting "while we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense, it is nevertheless clear that a construction of the Major Crimes Act to preclude such an instruction would raise difficplt constitutional questions”). Accordingly, the Supreme Court has not yet recognized a constitutional right to lesser included offense instructions, nor does this Court do so here.

. This Court’s willingness to invade the jury's province typified in Mease and the other cases cited in the separate opinions decreased markedly after Beck, and the Court's holding here merely extends the same certainty to non-capital cases in which a defendant seeks an instruction on a “nested” lesser included offense.

. Because Jackson’s convictions are vacated and the case is remanded on the grounds discussed above, the Court does not reach or address Jackson's claims relating to the sufficiency of the transcript in this appeal.