

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD36684
)
MATTHEW AARON JACKSON, ) **Filed: June 10, 2021**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

Honorable Jack A. L. Goodman, Circuit Judge

*Before Rahmeyer, P.J., Bates, J., and Francis, Jr., J.*

**<u>AFFIRMED</u>**

PER CURIAM.  Matthew Aaron Jackson ("Appellant") appeals his conviction for first-degree murder and armed criminal action.  In one point, Appellant contends that the State failed in its burden to prove the lack of self-defense.  We affirm the trial court's judgment.

There is no dispute that Appellant killed Steven Chupp ("Victim") with a knife in the backyard of a mutual friend.  The issue is whether the State proved a lack of self-defense beyond a reasonable doubt.  The majority of facts leading to Victim's death are

not disputed.  Appellant was assisting the mutual friend get her house ready for an appraisal.  When Appellant saw Victim drive by he retreated to the backyard with a pocket knife in the locked position.  Victim knocked on the homeowner's door, came into her house, and asked questions about Appellant.  The homeowner stated that Victim seemed very angry and jealous and appeared to have been drinking.  Victim asked if the homeowner had heard that Appellant was with Victim's girlfriend while Victim was out of town.  The homeowner responded that she thought Appellant and the girlfriend were just friends and that Appellant "was driving her vehicle because he didn't have wheels." Victim responded that "he was going to get him" and went around the side of the house to the back.  The mutual friend heard shouting from the backyard.  Thus, the evidence clearly indicated that Victim was the initial aggressor.

Once a defendant has injected the issue of self-defense into the case, the burden shifts to the State to prove beyond a reasonable doubt the absence of self-defense.  *State v. Henderson*, 311 S.W.3d 411, 413 (Mo.App. W.D. 2010).  "A person is entitled to acquittal as a matter of law on the basis of self-defense only if there is undisputed and uncontradicted evidence clearly establishing self-defense." *State v. Dulaney*, 989 S.W.2d 648, 651 (Mo.App. W.D. 1999).  "In reviewing the sufficiency of the evidence, this Court's review is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of guilt beyond a reasonable doubt." *State v. Bateman*, 318 S.W.3d 681, 686-87 (Mo. banc 2010) (internal quotations and citation omitted).  This Court does not act as a super juror with veto powers, but gives great deference to the trier of fact.  *Id.* at 687.  On review, this Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the

evidence, and disregards all evidence and inferences to the contrary. ***Id.***

With this standard of review in mind, we must reject the testimony contrary to the verdict given by Appellant as to the events leading up to the stabbing of Victim. That includes everything that occurred in the backyard between Appellant and Victim. Appellant does not and did not at the time of the incident deny that he was the one who used the knife against Victim. He was cooperative with the police, told them where the knife was, and admitted to stabbing Victim. From the beginning of his interview, Appellant claimed to have been attacked and claimed self-defense. Appellant did not run from the scene to evade responsibility. He hid in the woods until law enforcement and first responders appeared. He openly admitted to using the knife and immediately explained that he had been attacked. Appellant also exhibited wounds on his face. His own wounds and the actions of Victim further support Appellant's self-defense claim.

Because the burden shifted to the State and Appellant challenges the sufficiency of the evidence on his claim of self-defense, we look to the evidence which the State claims is sufficient evidence supporting the finding that Appellant did not act in self-defense. Specifically, the State relies upon the testimony of Jonathon Brannan, someone who was in jail at the same time as Appellant. Brannan testified:

> Q.      Did he at any point mention, he being [Appellant], . . . mention that he had a prior confrontation with [Victim]?
> A.      Yes. [Appellant] stated that there was a physical altercation between him and [Victim] that resulted in [Appellant] having his jaw broken.[1]
>
>            . . . .
>
> A.      [The incident at issue] was at a mutual acquaintance's home. I guess a friend that they had both shared. That [Appellant] shared along

---

[1] Appellant sought medical treatment after this prior altercation and an x-ray showed that he had trauma to the back of his head but that his jaw was not broken.

with [Victim].

Q. When he was discussing the matter of this mutual acquaintance's home, how would you describe his demeanor? How was his persona to you - presented to you?

A. Um, he was always cautious, but almost callous, almost kind of hardened.

Q. Did he make any statements as to how he felt about the event after the event?

. . . .

A. On one occasion [Appellant] stated that, um, he was glad that [Victim] was deceased. That even his parents thought that he was a piece of shit, excuse my language. Um, that the world was a better place without him. He made a comment that his only regret about [Victim] dying was that his little boy would grow up without a father. I took that - I assumed that [Victim] had a son.

He made a statement that the best thing that was going to come out of this was that he lived in Arkansas and after he was acquitted on self-defense that he could go to Arkansas and get a medical marijuana card and he stated that was the best thing to come out of this is because he could claim post-traumatic stress and receive a medical marijuana card.

Clearly, many of these statements by Brannan have nothing to do with whether Appellant acted in self-defense at the time of the incident. Appellant had been a friend of Victim; he had been assaulted by Victim about a month prior to this incident, causing Appellant to suffer serious injuries to his jaw. Specifically, Appellant's statement that he was glad that Victim was deceased and that the only regret he had was that Victim's son would grow up without a father do not support an inference that Appellant did not act in self-defense. They only reflect his feelings toward Victim after the incident. Brannan's additional statements that Appellant was cautious, almost callous, and hardened are not statements concerning an act of self-defense. Likewise, Appellant's disparagement of Victim that the world was a better place without him and that even Victim's parents recognized his worthlessness are not in any way related to Appellant's claim of self-defense. Even if these above statements after the fact as provided by Brannan are

4

assumed to be true, they do not provide sufficient evidence that Appellant did not act in self-defense at the time of the offense.

Additionally, there was evidence that Victim suffered wounds on his right hand and arm that could be called "defensive wounds," meaning injuries to the extremities caused during a stabbing. It was clear that Appellant was injured in the face, ear and forearm, suggesting that a fight had indeed occurred.[2] These facts alone do not provide sufficient evidence that Appellant was not acting in self-defense; however, the jury could have inferred that Appellant at some point was the aggressor in the fight.

The evidence and inferences that provide sufficient evidence includes the following additional testimony by Brannan:

> Q. Did [Appellant] at some point tell you what had happened, what he had done to [Victim]?
> A. That they were at this mutual acquaintance's home and that [Appellant] was alerted that [Victim] may be on his way or had come over later that evening and he made a statement that if he did he knew he would kill [Victim] that night.
> Q. Did he say in what manner he was going to do that?
> A. No, he did not. Not at that time. Later on he disclosed that when [Victim] did show up I don't know I guess a verbal altercation had occurred. [Appellant] left the house when he did he had a Gerber locked-blade knife on him. He opened the knife and put it in a locked position and stuck it in his back pocket and left the house.
>
> He told me that when [Victim] came out afterwards he turned around and stabbed [Victim]. He said he couldn't recall if it was three or four times. He said he remembered stabbing him two or three times in the upper abdomen and once in the side. And then he said that he, um, dropped the knife and made a bee-line for like the brush or tree line and stayed in there until first responders showed up which he said was quite a lengthy time.

---

[2] The State argued at trial that the fact there was more blood on Appellant's pants than his sweatshirt showed Appellant was standing over Victim when he was stabbed. Although a responding officer testified there was "more . . . blood on the pants th[a]n there was on the sweatshirt," there was no expert testimony regarding the significance of the blood splatters or patterns. In fact, Victim's clothes were thrown in the garbage. Appellant was booked in the jail hours after the incident. It is certainly a reasonable assumption that the blood on his clothes continued to spread downward and not upward. There was no testimony how Appellant's clothes had been gathered after the incident. No reasonable inference can be taken from the blood on the clothing.

The statement that once Appellant knew Victim "may be on his way or had come over later" could support an inference that Appellant planned to kill Victim if he showed up at the friend's house. Likewise, that Appellant "turned around and stabbed" Victim in isolation may indicate the lack of self-defense.

Although this evidence is slight to support a lack of self-defense we are constrained to conclude that the evidence and the inferences from the evidence provide sufficient evidence supporting a lack of self-defense. We draw this conclusion partly based on the Supreme Court's decision in *State v. Jackson*, 433 S.W.3d 390 (Mo. banc 2014). Although the holding in the case was whether a lesser included offense instruction should have been given, the case has been cited for the proposition that:

> No matter how strong, airtight, inescapable, or even absolutely certain the evidence and inferences in support of the differential element may seem to judges and lawyers, no evidence *ever* proves an element of a criminal case until all 12 jurors believe it, and no inference *ever* is drawn in a criminal case until all 12 jurors draw it.
>
> . . . .
>
> The question of whether the evidence is sufficient (i.e., whether a jury *may* find guilt beyond a reasonable doubt) is a proper question for trial and appellate courts, but the question of what the jury *must* find has no place in a criminal trial or appeal.

*Id.* at 399-400, 404 (emphasis in original).

This case was properly submitted to the jury with a self-defense instruction. The jury chose to disregard the evidence adduced by Appellant that he acted in self-defense. The jury chose to accept the evidence presented by the State. We question, after *Jackson*, whether this Court has the authority to grant a judgment of acquittal based on the failure of the State to provide sufficient evidence of the lack of self-defense after the jury renders

6

a verdict.  If we do have that authority, we must now hold that the evidence at trial met the bare requirements of presenting sufficient evidence to support a lack of self-defense. In other words the jury, and the jury alone, decided that the State had proven that Appellant had not acted in self-defense.

The judgment is affirmed.