**Clayton Lee BLANKENSHIP,
Respondent,**

v.

**Hilary Rose PORTER, Appellant.**

WD 77092

Missouri Court of Appeals,
Western District.

OPINION FILED: October 7, 2014

Motion for Rehearing and/or Transfer to Supreme Court Denied November 25, 2014

Modified November 25, 2014

Application for Transfer Denied February 3, 2015

Michaela Shelton, Overland Park, KS, Attorney for Respondent.

Jonathan Sternberg, Kansas City, MO, Attorney for Appellant.

Before Division One: Mark D. Pfeiffer, Presiding Judge, and Lisa White Hardwick and Karen King Mitchell, Judges

Karen King Mitchell, Judge

Hilary Porter (Mother) appeals from the trial court's judgment modifying parenting time and designating Father's (Clayton Blankenship) address as Child's residential address for educational and mailing purposes. Mother raises three points on appeal. First, Mother contends that the trial court erred in excluding, for lack of foundation, her Exhibits 20 and 21, images of Mother's mobile phone screen purportedly showing text message exchanges between the parties, as well as excluding testimony about what the exchanges stated, based on the "best evidence" rule. Second, Mother contends that the trial court erred in holding that she failed to meet her burden to prove her proposed relocation was in good faith. Third, Mother argues that the trial court erred in granting Father's motion to modify and transferring Child's residential custody[1] to Father because the court's decision was not in Child's best interests and was against the weight of the evidence. We affirm.

## Factual and Procedural Background[2]

M.M.B. (Child) was born in 2008. His parents were never married. On February 2, 2012, Mother and Father were awarded joint legal and physical custody of Child, with Mother's address designated for mailing and educational purposes. At the time of the amended judgment, Mother lived in Ogden, Kansas, and Father lived in Independence, Missouri. The parties met in Topeka, Kansas, to transfer Child when a change in parenting time occurred.

On April 1, 2013, Mother filed her notice of intent to relocate her residence from Fort Riley, Kansas, to Fort Stewart, Georgia. Mother sent notice of her intent to relocate to Father by certified mail on March 29, 2013. The notice stated that she intended to relocate by the end of May 2013 because her husband had received orders for a permanent change of station from the United States Army, that Child would be attending Catholic school in the Savannah, Georgia, area, that Father's last "regular visit" would be the weekend of May 17, 2013, and that Father's parenting time would be reduced to approximately four weeks total visitation during two visits each year.

On April 10, 2013, Father filed a *pro se* family access motion, alleging that Mother had denied him parenting time over spring break 2013, and that she intended to deny him parenting time when she relocated in May 2013. On April 17, 2013, Father timely filed his motion and affidavit seeking to prevent Child's relocation.

On May 21, 2013, Mother filed a motion to modify. Without authorization, Mother relocated Child to Georgia on May 27, 2013.

---

1. There is some dispute between the parties about Mother's use of the term "residential custody." We note that the trial court's judgment did not use the term "residential custody" and did not change the arrangement whereby Mother and Father have joint physical and legal custody of Child.

2. We view the facts in the light most favorable to the trial court's decision. *Durbin v. Durbin,* 226 S.W.3d 876, 879 (Mo.App.W.D.2007).

On May 30, 2013, Father filed a petition for writ of habeas corpus, stating that Mother relocated without his consent in violation of his right to court-ordered parenting time. The trial court granted the writ, set the matter for hearing on July 11, 2013, and ordered Mother to produce Child for the hearing.[3]

On June 6, 2013, Father and Mother appeared for a hearing on Father's family access motion. Contrary to the court order, Mother did not bring Child with her. The court overruled Father's family access motion because it was filed in April, before Mother had denied Father his summer parenting time.

On June 12, 2013, Mother filed an amended motion to modify parenting time, asking the court to adopt a long-distance parenting plan pursuant to her relocation, with Child residing primarily with her during the school year.

On June 23, 2013, Mother transferred Child to Father's custody. The trial court later quashed the writ of habeas corpus after no one appeared for the scheduled hearing.

On July 31, 2013, Father filed his motion to modify, requesting the trial court to change the designation of the mailing and educational address of Child to his address and to adopt his long-distance parenting plan, which had Child residing primarily with him during the school year. The trial court consolidated Father's motion to prevent relocation with Mother's and Father's motions to modify.

On October 30, 2013, the trial court entered the judgment of modification, in which it considered Father's motion and affidavit seeking to prevent relocation of the minor Child, his request for attorney fees contained in his petition for writ of habeas corpus and motion to modify, and Mother's amended motion to modify parenting time. The judgment overruled Mother's motion to modify and sustained Father's motion to modify, granted the parties joint legal and physical custody of Child, and designated Father's address as Child's residential address for educational and mailing purposes. The parenting plan entered by the court provided that Child shall reside with Father during the school year, with Mother having parenting time with Child the second weekend of each month, for extended weekends based on Child's school calendar, during spring break, all but two weeks during summer break, and alternating holidays and winter breaks.

Following the denial of her motions for new trial and rehearing, Mother appeals.

## Analysis

### Standard of Review

■■■■ "We will affirm the trial court's judgment unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law." *Thomas v. Moore*, 410 S.W.3d 748, 754 (Mo.App.W.D. 2013) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32·(Mo. banc 1976)). "We view the evidence and all permissible inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Querry v. Querry*, 382 S.W.3d 922, 926 (Mo.App.W.D.2012). " '[B]ecause the trial court is presumed to have acted in the best interests of the child[ ], the trial court's assessment regarding what serves the child[ ]'s best interests will be affirmed unless this court is

---

3. The present action was tried before a commissioner, whose findings and recommendations were then adopted by the trial court.

We collectively refer to the commissioner and adopting judge as "the trial court."

firmly convinced that the child[ ]'s welfare requires some other disposition.'" *Dixon v. Dixon,* 62 S.W.3d 589, 592 (Mo.App. W.D.2001) (quoting *In re S.E.P. v. Petry,* 35 S.W.3d 862, 867 (Mo.App.W.D.2001)).

For ease of analysis, we will consider Mother's points out of order.

**The trial court's finding that Mother's relocation was not in good faith does not render the trial court's judgment of modification erroneous.**

■ Mother's second point on appeal is that the trial court erred in holding that she failed to meet her burden to prove her proposed relocation was in good faith because there was no evidence that her purpose in relocating from Fort Riley, Kansas, to Fort Stewart, Georgia, was to disrupt or deprive Father of contact with Child in that it was undisputed that the purpose of the relocation was because Mother's husband had received permanent change-of-duty station orders from the U.S. Army, which required him to move under threat of military penalty, deprived Mother's family of its military housing in Fort Riley, and transferred their military housing to Fort Stewart, all undertaken by the Army without input from Mother and her husband. Because the trial court did not resolve this case based on whether relocation was appropriate, but rather on whether modification was in Child's best interest, we deny Mother's second point.

■ When the issue of the propriety of relocation is addressed by a trial court, whether the party seeking to relocate is acting in good faith is an issue that must be decided by the court. Section 452.377.9 [4] provides that "[t]he party seeking to relocate shall have the burden of proving that the proposed relocation is made in good faith and is in the best

interest of the child." "'Use of the conjunctive "and" makes it clear that the parent requesting relocation must meet both burdens.'" *Allen ex rel. Allen v. Gatewood,* 390 S.W.3d 245, 251 (Mo.App.W.D. 2013) (quoting *McDonald v. Burch,* 91 S.W.3d 660, 663 (Mo.App.W.D.2002)). "[I]f either prong [is] not met, [a parent] has not sustained her burden, and the trial court's judgment will be affirmed." *Mantonya v. Mantonya,* 311 S.W.3d 392, 399 (Mo.App.W.D.2010). However, where, as here, the relocation has already occurred, the court need not reach the issue of relocation and may resolve the case on a motion to modify. *Johnston v. Dunham,* 172 S.W.3d 442, 446 (Mo.App.W.D.2005) (because the parent seeking relocation had already relocated when the trial court made its decision to modify custody, the trial court need not consider section 452.377.9's requirement that the parent act in good faith in relocating).

In *Johnston,* this court considered motions to modify child custody filed by both parents, finding that the mother's violation of section 452.377 was a change of circumstances and that it was in the best interests of the children for the father to obtain custody. *Id.* at 446. The trial court did not address whether the mother's relocation was made in good faith. *Id.* at 447. On appeal, the mother claimed that the trial court erred in modifying custody because her relocation was made in good faith and in the children's best interests. *Id.* at 445. The court determined that whether the mother moved in good faith was "irrelevant because she moved the children without a court-order and while the issue of relocation was still pending." *Id.* at 447. The court noted that section 452.377.9 addresses a *proposed* relocation, and because the mother had already relo-

---

**4.** All statutory references are to the Missouri Revised Statutes, as updated through the 2013 Cumulative Supplement, unless otherwise indicated.

cated when the trial court made its decision to modify custody, the trial court did not abuse its discretion in not considering whether the mother acted in good faith in relocating. *Id.; see also Wright ex rel. McBath v. Wright,* 129 S.W.3d 882, 891–92 (Mo.App.W.D.2004) (finding that where mother relocated with child without complying with the requirements of the paternity order and section 452.377, whether mother acted in good faith in relocating was a "non-issue").

In its Judgment of Modification, the trial court stated that on October 1, 2013, "this matter came before the Court on [Father's] Motion and Affidavit seeking Prevention of Relocation of the Minor Child," as well as Father's request for attorney fees and motion to modify, and Mother's amended motion to modify. In its judgment, however, the trial court did not rule on the motion to prevent relocation; rather, the docket sheet indicates that, as of the date of the judgment, the motion to prevent relocation was "no longer an issue," presumably because, as the trial court noted, Mother moved to Georgia in May 2013, after Father filed his motion seeking to prevent relocation and before a hearing on the motion. The trial court resolved the substantive issues based on the cross-motions to modify.

Nonetheless, the trial court determined:

Mother has the burden of proving that her proposed relocation is made in good faith and in the best interests of the minor child. "Good faith" references the relocating parent's motivation or purpose for relocating other than to disrupt or deprive the non-relocating parent of contact with the minor children. *Swisher v. Swisher,* 124 S.W.3d 477, 482 (Mo.App.2003). While normally a change of duty station for a spouse in the military might be a basis for the

Court to find good faith, the Court finds that this is offset by Respondent's conduct in this process. Respondent knew in November or December 2012 that there would be a change of duty station, even if she did not know the exact assignment. She did not even mention it to Petitioner. She waited until the end of March, 2013 to notify Petitioner, and then relocated even before the 60 day period had passed, ignoring that Petitioner had timely filed objections to that relocation. Respondent disrupted and deprived the Father of his contact with the Child, based on her own testimony that she intentionally relocated the Child in May 2013 in violation of the Court's orders that Father have parenting time beginning May 24, 2013, Memorial Day weekend, and through the summer school break. She was aware that it was a violation of the Court's orders for her to do so. The Child was available to be with Father during that period of time and her relocation would not have prevented Father from exercising his extended parenting schedule during the summer. The Court finds that Mother could have moved with her husband to Georgia, leaving the Child with his Father until a hearing on this matter, but instead intentionally chose to relocate the Child without permission from this Court and before the Court could determine whether relocation was in the Child's best interests.

Respondent has failed to prove that the relocation, which has already occurred without Court permission, was made in good faith.

■ Though we agree with Mother that, had the trial court reached Father's motion to prevent relocation the trial court's focus appropriately would have been on

Mother's purpose for relocating,[5] here, the trial court was not required to address good faith under section 452.377 because Mother had already relocated Child. Nevertheless, the trial court did not err in considering the circumstances surrounding Mother's relocation of Child in deciding the cross-motions for modification. Nor did the trial court err in finding that those circumstances evidenced a lack of good faith on Mother's part. Although Mother may have had a good faith purpose for relocating, the trial court was justified in concluding that she did not act in good faith when she relocated Child without waiting until she had the proper authority to do so. Further, Mother had options available to her that would not have violated the existing court order and would not have interfered with Father's right to time with Child; for example, she could have moved but left Child with Father until the trial court ruled on Father's objection to relocation. The factual findings underlying the trial court's conclusion regarding good faith are relevant to the court's evaluation of what is in Child's best interest for purposes of modification, in that they reflect on Mother's willingness to facilitate parenting time with Father—a statutory factor in the best interest analysis. Point II is denied.

### Exclusion of photos of a mobile phone screen purporting to show text messages between the parties is not reversible error.

■ In her first point on appeal, Mother contends that the trial court erred in excluding, for lack of foundation, her Exhibits 20 and 21, which were photos of Mother's mobile phone screen purporting to show text message exchanges between the parties, as well as excluding, based on the "best evidence" rule, Mother's testimony regarding the contents of those messages. Mother claims that she established a sufficient foundation for the exhibits; that even if the photographs were properly excluded, she should have been allowed to testify about the contents of the text messages because the "best evidence" rule does not exclude testimony of the contents of writings based on personal knowledge; and that she presented ample evidence of personal knowledge in that she testified that the parties regularly sent text messages to each other, that she knew the messages in the exhibits were actually authored by the parties, and that she had knowledge of their content.

■ Recognizing that "[p]rejudicial or reversible error in the admission or rejection of evidence is not an issue on appeal in any case tried before the judge

---

5. Although it is not defined in section 452.377.9, this court has determined that, in the context of section 452.377.9, "good faith" is "essentially defined ... as the relocating parent's motive or purpose for relocating being something other than to disrupt or deprive the non-relocating parent of contact with the children." *Swisher v. Swisher*, 124 S.W.3d 477, 481 (Mo.App.W.D.2003). " '[G]ood faith,' for purposes of [section] 452.377.9, speaks only to the relocating parent's motive or purpose for relocating, or, in other words, the 'why' for relocating." *Id.* "Section 452.377 does not suggest ... that relocation in the face of a motion seeking to prevent the relocation is suggestive that the request was not made in 'good faith.' " *Mantonya v. Mantonya*, 311 S.W.3d 392, 400 (Mo. App.W.D.2010). The trial court seems to acknowledge that Mother's reason for relocating was her husband's change of military duty station, and it found that this reason was "offset" by Mother's relocation with Child without the court's permission, which does not concern her motive or purpose for relocating. In other words, although Mother's relocation without the court's permission may have had the *effect* of disrupting or depriving Father of contact with Child, the court did not find that such disruption or deprivation was Mother's *motive or purpose* for relocating.

without a jury," *City of Town and Country v. St. Louis Cnty.*, 657 S.W.2d 598, 608 (Mo. banc 1983), Mother concedes that the trial court's exclusion of the exhibits is not reversible error.[6] However, Mother encourages this court to "bear this evidence in mind" in our review of Point III. In other words, Mother asks us to find that photos of her mobile phone screen purporting to show text messages or testimony regarding those messages should have been admitted and thus should be considered in determining whether modification was against the weight of the evidence (Point III). We do not address whether the evidence *should have been admitted* because even assuming, *arguendo,* that the exhibits and testimony were admissible, their admission would not change our analysis of whether the modification was against the weight of the evidence because the trial court admitted other testimony substantially similar to the excluded evidence. *See In re Interest of N.D.,* 857 S.W.2d 835, 838 (Mo.App.W.D.1993); *see also Robertson v. Robertson,* 15 S.W.3d 407, 419 (Mo.App.S.D.2000) (finding that there could be no prejudice where the excluded evidence was largely duplicative of other admitted evidence); *Mo. Bd. of Nursing Home Adm'rs v. Stephens,* 106 S.W.3d 524, 528 (Mo.App.W.D.2003) ("Where the exclusion of evidence is harmless, the judgment must be affirmed."); Rule 84.13(b)[7] ("No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action.").

Mother sought to admit text messages purportedly between her and Father during the summer of 2013 to demonstrate that she often had difficulty reaching Child by phone when he was in Father's custody and that Father did not facilitate telephone contact between her and Child. Although the challenged evidence was excluded, Mother was allowed to testify that some of the messages she sent said things like, "It's been several days since I've been able to speak to [Child]. I would like to speak to my child," and "If you're not with him, will you tell me who has him, and I'll just contact them directly." When asked what Father's responses were, Mother testified, "He usually won't respond at all—." She further testified there were periods of time during summer 2013 that she went without hearing from Child, with the longest period being "[f]ive, six days, something like that, nearly a week where I was calling every single day and not getting a hold of him." She testified that she was calling "every single day" and "never hearing back from him," that she would "eventually get him on the phone," that there were times that she was not able to talk to Child over a weekend, and that Father "usually ... just blamed his ... cell phone" for why Mother could not talk to Child.

Mother's testimony substantially covered the content of the excluded exhibits, and to the extent the content was not covered, we find that the admission of the exhibits would not have any effect on our review of the trial court's "best interests" determination. Therefore, with Mother's

**6.** "Error in the admission and rejection of evidence in a court-tried case ... is not cause for reversal because '[ ] the appellate court considers such evidence in the record as deemed admissible, and excludes from consideration evidence improperly admitted and reaches its judgment on the competent evidence offered without regard to the trial [court's] ruling.'" *L.S. v. L.M.S.,* 538 S.W.2d 753, 755 (Mo.App.1976) (quoting *Linders v. Linders,* 356 Mo. 852, 204 S.W.2d 229, 234 (1947)).

**7.** All references to rules are to the Missouri Court Rules (2013), unless otherwise indicated.

evidence in mind, we consider Mother's claim that the trial court's modification was against the weight of the evidence. Point I is denied.

### The trial court's modification was not against the weight of the evidence.

▪ In her third point on appeal, Mother contends that the trial court erred in granting Father's motion to modify and transferring Child's "residential custody" [8] to Father because the court's decision was not in Child's best interests and was against the weight of the evidence in that: (1) the court's decision unnecessarily and disruptively ripped five-year-old Child away from the nurturing family environment he had always known, forcing a child of tender age to make monthly air journeys halfway across the United States alone; (2) the court's reliance on Mother's previous five-mile move without notice was legally irrelevant; and (3) the court's reliance on Mother's supposed "advance knowledge" of their Georgia move, as well as the potential the Army would move Mother's husband again, lack evidentiary support.

▪ Where "the parties have joint custody and seek a modification of the parenting time schedule and residential designation[ but] do not seek to modify the custodial arrangement itself . . ., the standard [for modification] found in section 452.410.1 is appropriate." *Clayton v.*

8. See footnote 1.

9. We note that section 452.411 provides that "[i]f either parent of a child changes his residence to another state, such change of residence of the parent shall be deemed a change of circumstances under section 452.410, allowing the court to modify a prior visitation or custody decree." Section 452.377.12 provides, in relevant part, that "[v]iolation of the provisions of this section or a court order under this section may be deemed a change of circumstance under section 452.410, allowing the court to modify the prior custody decree."

*Sarratt,* 387 S.W.3d 439, 446 n.16 (Mo. App.W.D.2013). Section 452.410.1 provides, in relevant part:

> [T]he court shall not modify a prior custody decree unless . . . it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

▪ In a modification proceeding, the trial court must determine: (1) whether there was a change in the circumstances of the custodial parent or the child; and (2) if so, whether the best interests of the child are served by modifying custody. *Clayton,* 387 S.W.3d at 446 n.16, 448. Mother does not contest the trial court's finding that there was a change in circumstances under section 452.410.1.[9] Rather, she contends that the trial court's decision to modify was not in Child's best interests. In evaluating the best interests of the child for purposes of modification, the court is required to consider and make written findings as to all relevant factors set forth in section 452.375.2. *Id.* at 448. Those factors include:

> (1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

Mother violated section 452.377.7, which provides that "[t]he residence of the child may be relocated sixty days after providing notice, as required by this section, unless a parent files a motion seeking an order to prevent the relocation within thirty days after receipt of such notice." "The clear intent of this provision is to 'stay' a parent's relocation once a motion seeking to prevent relocation is timely filed until relocation is subsequently permitted by the court." *Mantonya,* 311 S.W.3d at 400.

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence as defined in section 455.010 has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian. The fact that a parent sends his or her child or children to a home school, as defined in section 167.031, shall not be the sole factor that a court considers in determining custody of such child or children.

§ 452.375.2.

The court considered all the factors with the exception of factors five, six and eight, which the court found did not favor either party because there was little or no evidence offered as to those factors. The court concluded that all of the other factors favored Father. In considering the factors, the court concluded as follows: Father's parenting plan proposed more parenting time for Mother than Mother's plan provided for Father, and the court placed great weight on its finding that Mother was unwilling to meet the needs of Child to have frequent and meaningful contact with Father; Mother was unable and unwilling to abide by the court's orders concerning Father's court-ordered parenting time; Mother was unwilling to fulfill her duty to confer with Father about decisions concerning Child, including educational and medical decisions; Child has a large, extended family, with whom he is close, in Missouri, and it was possible that Mother's husband would reenlist and be stationed elsewhere; in the prior amended judgment, Mother testified that she did not want to give Father frequent contact with Child; Mother had relocated with Child without court permission and, since May 2013, had not allowed Father court-ordered contact with Child; Mother manipulated the facts of a missed visitation in order to show that Father missed his parenting time; Mother's denial of telephone contact between Father and Child remained a problem; there was little evidence of Child's adjustment to home, school, and community due to Child's recent relocation; and Mother unilaterally relocated Child's residence to Georgia despite the timely filing of Father's objections and without court permission. The trial court also found that Mother "was often not credible in her testimony." The Court concluded that it was in Child's best interests that the parents continue to have joint legal and physical custody, but that the parenting time be modified and that

Father's address be designated as child's residential address for educational and mailing purposes.

We initially note that Mother cites several cases in which Missouri courts have either affirmed judgments refusing to change "residential" custody of a child due to a parent's long-distance move or refusing to modify a parenting plan in a manner that adversely affects the relocating parent, or reversed denials of long-distance relocations. However, we are mindful that each modification case "is reviewed in light of its own unique facts." *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 89 (Mo.App. W.D.2006).

Mother contends that the court's reliance on her April 2012 move from Ogden, Kansas, to Fort Riley, Kansas, without notice was legally irrelevant, as it did not change Child's circumstances, and Father admitted he also failed to provide notice of his move from Independence to Rayville, Missouri.

Mother cites *Clary v. Orellana*, 168 S.W.3d 106, 108 (Mo.App.S.D.2005), in support of her argument that "[w]hen a party fails to give such a notice for a previous move that 'caused no change in the original visitation schedule,' ... especially when the other party has failed in the same for one of his moves, it cannot support a change in residential custody from one parent to the other." In *Clary*, the trial court, in its judgment modifying custody, made a sole finding, that the mother relocated the child without complying with section 452.377, and such failure to comply with the statute was "grounds for an automatic change in custody." *Clary*, 168 S.W.3d at 107. The appellate court reversed the modification, determining that the court's sole finding could not be the basis for a modification, and that there was

no provision for an automatic change in custody for failure to provide the required notice of section 452.377. *Id.* at 108. *Clary* is inapposite here, as the trial court in this case made extensive findings regarding its reasons for modifying. Although the trial court found that there was a change of circumstances based on Mother's violations of section 452.377, it did not find that Mother's violations of section 452.377 were grounds for an automatic modification of its previous judgment. Rather, the trial court found that the best interests of the child required modification, in compliance with section 452.210. We further note that: (1) the trial court focused on Mother's violations of section 452.377 regarding her relocation to Georgia rather than her relocation to Fort Riley, and Mother's failure to comply with section 452.377 in regard to the relocation to Georgia constitutes a change of circumstances allowing modification;[10] and (2) the trial court took into consideration Father's violation of section 452.377 in failing to provide notice to Mother of his move from Independence to Rayville, Missouri, as noted in its judgment of modification.

Next, Mother argues that the court's reliance on her supposed "advance knowledge" of their Georgia move as well as the potential the Army would move Mother's husband lack evidentiary support.

Concerning Mother's advance knowledge of her move to Georgia, Mother points to findings by the trial court that Mother "could have provided notice of her intent to relocate well in advance of 60 days before her move, but intentionally chose not to do so," and that she "knew in November or December 2012 that there would be a change of duty station, even if she did not know the exact assignment," and Mother "did not even mention it" to

10. See footnote 9.

Father. These findings were supported by the evidence, including the testimony of Mother and her husband, and they were relevant to give context to the trial court's findings that Mother violated section 452.377 by relocating before the 60 days required by section 452.377 and after Father had filed his objection to her relocation.

Regarding the potential that the Army would relocate Mother's husband, the trial court found that Mother's husband "testified that he will remain based at Ft. Stewart until the end of the present enlistment in December, 2015. However, if he reenlists, he could be stationed elsewhere." This finding by the trial court is supported by the evidence. Mother's husband testified that he had not yet made a decision as to whether he would reenlist in the Army. Mother testified that the military makes the decision about where to send her husband and he does not get to decide that. Mother's husband testified that the military currently has a policy to allow soldiers to "reenlist for stabilization," apparently allowing a soldier to remain at his current duty station after reenlistment, and under this program, he could stay at Fort Stewart indefinitely. However, he also testified that, if the Army were to change its "approach to reenlistment," he would be subject to the Army's rules and regulations, and if the Army were to tell him to "go somewhere else," he would have to obey those orders.

Mother next alleges that enrolling Child in school without Father's input and problems with Father's telephone contact with Child cannot favor either party, because Father had done the same.[11]

Concerning Child's enrollment in school, the trial court found that Mother "enrolled [Child] in Catholic school without discussing the decision to enroll the child in a religious school with Father," that Mother failed to give Father information about the school, and that the first information Father received about the school Child was enrolled in was from exhibits introduced at trial. The trial court also found that Father "unilaterally" enrolled Child in the Excelsior Springs school district, which he did not have the right to do, but that he had notified Mother soon after doing so. This finding indicates that the trial court was aware of Father's actions and took them into account. In its findings regarding the "best interest" factors, specifically factor two concerning the needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child, the trial court found that "Mother testified that she did not confer with Father about enrolling the Child in a Catholic school," while "Father testified and introduced evidence that he provided information about the school where the Child was enrolled in Missouri." This does not discount Father's actions in unilaterally enrolling

11. This contention and Mother's contention that her testimony in the original custody proceeding was irrelevant were not raised in Mother's point relied on and appear for the first time in the argument section of Mother's brief. Pursuant to Rule 84.04(e), our review is limited to issues set forth in the point relied on. *Green v. Plaza in Clayton Condominium Ass'n*, 410 S.W.3d 272, 278 (Mo.App.E.D. 2013). "We may, however, consider arguments that are fairly encompassed by each point." *Id.* Moreover, "[i]n cases relating to children's welfare, we may relax the rigid requirements [of Rule 84.04] if we can sufficiently ascertain the issues being raised." *Buckley v. Tipton*, 270 S.W.3d 919, 922 (Mo. App.W.D.2008). Because Mother's arguments are fairly encompassed by her point contesting the court's best interests determination and we can ascertain the issues being raised, we address Mother's points.

Child in school, but indicates that the trial court placed greater emphasis on the notice and information provided by each parent to the other regarding the schools in which they respectively enrolled Child. The trial court's findings were supported by the evidence and were only two of many findings the trial court made in support of its determination that this factor favored Father.

Concerning problems with telephone contact, the trial court found as follows:

The evidence is undisputed that the Child has remained in Georgia since August 15, without any parenting time with his Father except phone contact. Father testified that phone contact with the Child ... in Georgia was limited, based on Mother's unwillingness to allow phone contact after 7:30 p.m. Eastern time as evidenced by Mother's instructions contained in an email to Father. Further during his phone calls, the Child would be placed on speaker phone with the other children making noises in the background, which he said made communication difficult.

Mother claims that her phone records, introduced by Father, show that out of 33 call attempts by Mother during summer 2013, only eleven calls were successful and only five missed calls were returned, and once she went nearly a week without hearing from Child. Mother also suggests that we consider her excluded text messages which she alleges contain messages between Father and her regarding her inability to contact Child by phone. As discussed in relation to Point I, *supra*, we find that these exhibits would not have altered the trial court's determination nor do they affect our review, especially in light of Mother's testimony as to the contents of the alleged messages. Mother testified that she had problems reaching Child by phone when he was in Father's

custody, and that she did not interfere with Father's telephone contact with Child while Child was in Mother's custody. Conversely, Father testified that he had problems communicating with Child by telephone while Child was in Mother's care, and that he did not interfere with Mother's telephone communication with Child. However, the trial court found that Mother "was often not credible in her testimony." This court defers to the trial court's superior position to assess witness credibility. *Thomas*, 410 S.W.3d at 754–55. Furthermore, the phone records in Father's Exhibit 10 do not indicate which phone calls were "successful," and do not, by themselves and without context, indicate that Father interfered with Mother's telephone contact with Child.

Next, Mother contends that her testimony in the original custody proceeding was irrelevant. In its analysis of the "best interest" factors, the trial court took judicial notice of the Amended Judgment in the original paternity case, in which the court found that "Mother testified previously that she did not want to give Father frequent contact with the Child." Mother argues that the court's acknowledgement of the finding in the Amended Judgment was error because the trial court's purview under section 452.410 was limited to "facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree." We disagree.

In *Querry v. Querry*, the trial court's custody modification judgment referenced a finding in the prior judgment of the court that the father was more likely to allow frequent, continuing, and meaningful contact with the other parent. 382 S.W.3d at 930 n.5. As in the present case, the mother in *Querry* contended that the trial court erred by considering evidence from the original dissolution proceeding because section 452.410.1 requires that the court

solely rely on facts that have arisen since the prior decree. *Id.* at 929–30. This court disagreed, stating that "[c]ertainly, section 452.410.1 cannot be read to prohibit the court from considering its previous findings and admonitions, particularly when they, coupled with facts that have arisen since the prior decree, evidence a pattern of conduct that bears on making a determination for the best interest of the children." *Id.* at 929 n.5. Under *Querry,* the trial court could consider the court's finding in the previous judgment because that finding, coupled with facts that had arisen since the prior decree, demonstrated a pattern of conduct that bore on the trial court's determination of the best interests of Child, specifically which parent is more likely to allow Child frequent, continuing, and meaningful contact with the other parent.

Last, Mother contends that the trial court's modification, "wrenching [Child] away from the [Mother's family] and severely disrupting the residential existence he always had known during his young life" was not in Child's best interests. As Mother appears to concede, the "tender years presumption" has been abolished in Missouri. *Stoutimore v. Stoutimore,* 684 S.W.2d 344, 347 (Mo.App.W.D.1984); § 452.375.8. The record indicates that both Mother and Father have been a significant presence in Child's life. Mother and Father have had joint legal and physical custody of Child since February 2012, with Child spending substantial time with each parent. The modified parenting plan devised by the trial court allows for Child to spend significant time with each parent. As Mother points out, frequent air travel by a young child is not ideal. However, because we find that the trial court's best interests determination is not against the weight of the evidence and we are not firmly convinced that Child's welfare requires some other disposition, we affirm

the trial court's modification. Point III is denied.

We affirm the judgment of the trial court.

Mark D. Pfeiffer, Presiding Judge, and Lisa White Hardwick, Judge, concur.