

# In the Missouri Court of Appeals
## Western District

| | | | |
|---|---|---|---|
| STATE OF MISSOURI, | ) | | |
| Respondent, | ) | | |
| v. | ) | | |
| | ) | WD76255 | |
| BRANDON M. ROBERTS, | ) | | |
| Appellant. | ) | FILED: November 18, 2014 | |

## APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
### THE HONORABLE PATRICK K. ROBB, JUDGE

### BEFORE DIVISION ONE: THOMAS H. NEWTON, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND ANTHONY REX GABBERT, JUDGES

Brandon Roberts appeals from his convictions for second-degree domestic assault and victim tampering. He contends the circuit court erred in refusing his proposed instruction for the lesser included offense of third-degree domestic assault. He also asserts that the court erred in permitting the State to join his charges and abused its discretion in overruling his motion to sever.

We find that Roberts was entitled to have the jury instructed on the lesser included offense of third-degree domestic assault. Therefore, his second-degree domestic assault conviction is vacated. Because second-degree domestic assault was the underlying crime on his victim tampering conviction, we must also vacate

the victim tampering conviction. The case is remanded to the circuit court for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

In June 2012, A.A. and her three children were living with Roberts and his daughter. A.A. had a close relationship with Roberts's daughter and had raised her "like she was one of [her] own kids."

On June 3, 2012, A.A. and Roberts argued. They had not been getting along in the month prior to that date. A.A. was unemployed, and her unemployment was a point of contention between her and Roberts. A.A. had received some food stamps that day, so she asked Roberts if she could use his truck to go to the grocery store. Roberts was in the shower at the time and told her, "No." When A.A. told him she was going anyway, Roberts ripped down the shower curtain, and they began to fight.

Roberts got out of the shower and hit A.A. A.A. picked up the shower curtain rod and tried to hit him with it to defend herself. Roberts and A.A. were screaming at each other, and Roberts was hitting and punching A.A. in the back of her head. At one point, Roberts grabbed the shower curtain rod and hit A.A. with it.

The fight ended. A.A. left the bathroom, took Roberts's truck keys, and threw them out the back door. Roberts went outside to look for the keys. The children, who were in the house during the fight, were screaming and crying. They went outside to help Roberts look for the truck keys. Roberts did not find the

2

keys.  A.A. continued to yell and scream at Roberts, and she told him that she was calling the police.

Roberts went back inside the house.  He and A.A. began fighting again and punching each other.  Roberts had picked up a hammer in the backyard, but A.A. did not know whether he was still holding it when he came back inside the house.  Roberts pinned A.A. against the washing machine.  He continued to hit A.A. on the back of her head as she was lying across the top of the washing machine with her back to him.  After Roberts hit A.A. a couple more times, he went to put on the rest of his clothes.

A.A. went out the front door to find the children.  Roberts grabbed his daughter and left.  A.A.'s children were at a neighbor's house.  One of A.A.'s children, K.A., had run to the neighbor and told her, "Brandon's beating my mommy with a hammer."  The neighbor described K.A. as "hysterical" and said that she was "crying" and "screaming."  The neighbor called the police.  Before Roberts left with his daughter, he had asked the neighbor to "give him a ride out of there."  The neighbor declined, saying that she "didn't want to get in the middle of it."  When A.A. came to the neighbor's house to retrieve her children, the neighbor noticed that A.A. had "a bunch of red marks on her neck and one of her arms."  She also noticed that A.A. had a knot on the back of her head.

A.A. gave her statement to a police deputy and showed the deputy her injuries. The deputy observed red marks and small scratches on A.A.'s head, including a red mark in the middle of her forehead that was "slightly raised up," like

3

it had been inflicted recently.  The deputy photographed A.A.'s injuries and the scene.  Some of the photos showed an earring on top of the washing machine and a hammer on the ground in the back yard.

Later that day, A.A. spoke to Roberts on the telephone.  They agreed to meet, and for the next several days, their relationship was "great."  They stayed at motels so that they "could be together" and avoid the police, who were looking for him.  They took their children to the zoo and spent time together.  After about a week, they returned home.  The police eventually arrested Roberts, and the State charged him with second-degree domestic assault.

After his arrest, Roberts spoke to A.A. by telephone several times.  He told her to "get him out" and to say that "it didn't happen."  On one occasion, they discussed having her say that she "got in a fight with a girl."  Roberts also wrote A.A. several letters, and in one letter, he asked her to say that the incident "didn't happen."

During a phone conversation toward the end of June or beginning of July, Roberts told A.A. to "plead the Fifth."  At one point, A.A. agreed to do that because she loved Roberts.  She also agreed to lie or to make up a story because she wanted to "be with him and his daughter."  From June to August, Roberts made 45 phone calls to A.A., all of which were recorded.  Based on Roberts's communications with A.A., the State charged him with victim tampering.

Before trial, the State moved to join Roberts's charges.  The circuit court granted the motion.  After the court joined the charges, the State filed an amended

4

information charging Roberts, as a persistent offender, with second-degree domestic assault, in violation of Section 565.073, RSMo 2000, and victim tampering, in violation of Section 575.270, RSMo Cum. Supp. 2013. Roberts later moved to sever the charges, but the court denied his motion.

A jury trial was held. Roberts's defense was that he acted in self-defense, and the court instructed the jury on self-defense. The court refused Roberts's proposed instruction on the lesser included offense of third-degree domestic assault.

The jury found Roberts guilty of both charges. The court sentenced Roberts to consecutive sentences of five years in prison for second-degree domestic assault and two years in prison for victim tampering. Roberts appeals.

## ANALYSIS

### *Refusal to Give Lesser Included Offense Instruction*

In Point I, Roberts contends the circuit court erred in refusing to give his proposed instruction on the lesser included offense of third-degree domestic assault. He argues that there was a basis in the evidence for acquitting him of the higher offense and convicting him of the lesser included offense because the jury could have found that he recklessly injured A.A. in a case of imperfect self-defense.

Our review of the circuit court's decision to give or refuse a requested jury instruction under Section 556.046, RSMo Cum. Supp. 2013, is *de novo*. *State v. Jackson*, 433 S.W.3d 390, 395 (Mo. banc 2014). "[I]f the statutory requirements

5

for giving such an instruction are met, a failure to give a requested instruction is reversible error." *Id*. (footnote omitted).

The court instructed the jury on second-degree domestic assault, which required the jury to find that: (1) Roberts knowingly caused physical injury to A.A. by punching her; (2) A.A. and Roberts were adults who had been in a continuing social relationship of a romantic or intimate nature.[1] The proposed third-degree domestic assault instruction would have required the jury to find that: (1) Roberts recklessly caused physical injury to A.A. by punching her; and (2) A.A. and Roberts were adults who had been in a continuing social relationship of a romantic or intimate nature.

Both the second-degree and third-degree domestic assault instructions would have required the jury to find the same type of injury and conduct. The distinction between the two instructions is that the second-degree domestic assault instruction required the jury to determine whether Roberts "knowingly" caused physical injury to A.A., while the third-degree domestic assault instruction would have required the jury to determine whether Roberts "recklessly" caused the physical injury. A person "acts knowingly" "[w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." § 562.016.3(2), RSMo 2000. A person "acts recklessly" "when he consciously disregards a substantial and unjustifiable risk . . . that a result will

---

[1] Because Roberts asserted that he acted in self-defense, the State was also required to prove that he did not act in lawful self-defense as submitted in a separate instruction.

6

follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."  § 562.016.4.

Under Section 556.046, the circuit court is required to give an instruction on a lesser included offense when each of these requirements is met:  "a. a party requests the instruction; b. there is a basis in the evidence for acquitting the defendant of the charged offense; and c. there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested."  *Jackson*, 433 S.W.3d at 396 (footnote omitted).  "'Doubts concerning whether to instruct on a lesser included offense should be resolved in favor of including the instruction, leaving it to the jury to decide.'"  *State v. Williams*, 313 S.W.3d 656, 660 (Mo. banc 2010) (quoting *State v. Derenzy*, 89 S.W.3d 472, 474-75 (Mo. banc 2002)).

Applying the three requirements to this case, the State concedes that Roberts timely requested the third-degree domestic assault instruction.  Roberts initially requested the lesser included offense instruction before trial, and he renewed his request at the time of the instructions conference.

The State also concedes that there was a basis in the evidence for acquitting Roberts of second-degree domestic assault.  In discussing this requirement in *Jackson*, 433 S.W.3d at 399, the Supreme Court found that there is a basis to acquit the defendant of the greater offense in virtually every case.  This is because "the jury's right to disbelieve all or any part of the evidence and its right to refuse to draw needed inferences is a sufficient basis in the evidence -- by itself -- for a

7

jury to conclude that the state has failed to prove the differential element [between the greater and lesser offenses]." *Id*. The Court further explained that the jury's right to disbelieve all or any part of the evidence and to refuse to draw inferences constitutes a sufficient basis for acquittal regardless of the strength of the State's case:

> No matter how strong, airtight, inescapable, or even absolutely certain the evidence and inferences in support of the differential element may seem to judges and lawyers, no evidence *ever* proves an element of a criminal case until all 12 jurors believe it, and no inference *ever* is drawn in a criminal case until all 12 jurors draw it.

*Id*. at 400. Accordingly, there was a basis to acquit Roberts of second-degree domestic assault because the jury did not have to believe that he punched A.A., and the jury did not have to believe or infer that, by doing so, he knowingly caused physical injury to her.

The issue in this case is whether the third requirement for instructing on a lesser included offense was satisfied, that is, whether there was a basis in the evidence for convicting Roberts of the lesser included offense of third-degree domestic assault. Roberts contends there was such a basis because the jury could have believed that he caused physical injury to A.A. recklessly, rather than knowingly, in a case of imperfect self-defense. Specifically, he argues that the jury could have found that he was acting in defense of himself when he punched A.A. and yet also believed that his conduct was too reckless to excuse as lawful self-defense. In response, the State argues that there was no evidence to support an inference that Roberts was reckless, because there was no affirmative evidence

8

that, in punching A.A., he was consciously disregarding a substantial risk of unlawfully causing some physical pain and that his disregard was a gross deviation from the standard of care that a reasonable person would exercise in that situation.

Roberts asserts that no additional evidence was required to establish recklessness because third-degree assault is a "nested" lesser included offense of second-degree assault. The Supreme Court explained the concept of "nested" lesser included offenses in *Jackson*. The defendant in *Jackson* was charged with first-degree robbery, which required the jury to find that he took the victim's property by force and that the victim reasonably believed that he was using or threatening to use a weapon. *Id*. at 394. The circuit court declined the defendant's request to instruct the jury on the lesser included offense of second-degree robbery, which required the jury to find only that he took the victim's property by force. *Id*.

On appeal, the Supreme Court reversed, finding that all three requirements for instructing on the lesser included offense had been met. *Id*. at 396-409. In discussing the third requirement -- whether there was a basis for convicting the defendant of the lesser offense -- the Court noted that first-degree and second-degree robbery require proof of the same elements, that is, proof of whether the defendant took the victim's property by force. *Id*. at 404. The only differential element between the two offenses is whether the victim reasonably believed that the defendant was using or threatening to use a weapon, which is a required element of only first-degree robbery. *Id*. Hence, the Court found that second-

9

degree robbery is a "nested" lesser included offense of first-degree robbery, because it is comprised of a subset of the elements of first-degree robbery. *Id*.

The Court explained that, where nested lesser included offenses are involved, "'it is ***impossible to commit*** the greater without ***necessarily committing*** the lesser.'" *Id*. (citation omitted). This is because "[a]ny evidence that is sufficient to prove the elements of the charged offense must necessarily be sufficient to prove a crime that is comprised of a subset of those same elements, i.e., a 'nested' lesser offense." *Id*. at 405. Therefore, because there was sufficient evidence in *Jackson* from which the jury could find that the defendant committed first-degree robbery by taking the victim's property by force *and* using or threatening to use a gun, the evidence was necessarily sufficient to prove that the defendant committed second-degree robbery by simply taking the victim's property by force without using or threatening to use a gun. *Id*.

The Court noted that this reasoning also applied to require the court to give the requested instruction for the nested lesser included offense in *Jackson*'s companion case, *Pierce v. State*, 433 S.W.3d 424 (Mo. banc 2014). *Jackson*, 433 S.W.3d at 405. Because the evidence in *Pierce* was sufficient to prove that the defendant, who was found in possession of cocaine base, committed second-degree trafficking in that the controlled substance weighed two or more grams, the evidence had to be sufficient to prove the nested lesser included offense of possession, which includes all of the elements of second-degree trafficking except

10

evidence of the controlled substance's weight. *Id*. (citing *Pierce*, 433 S.W.3d at 432).

The State contends this case is distinguishable from *Jackson* and *Pierce*. The State argues that, unlike in *Jackson* and *Pierce*, the lesser included offense in this case is not nested because it is not merely the absence of one element that differentiates the lesser offense from the greater. Rather, the difference between third-degree domestic assault and second-degree domestic assault is the substitution of one element for another, namely, the mental state of "recklessly" for "knowingly." Thus, the State argues that affirmative evidence that Roberts acted recklessly was required to support an instruction for third-degree domestic assault. We disagree.

Although "knowingly" and "recklessly" are different mental states, Section 562.021.4, RSMo 2000, provides that each culpable mental state is included in higher mental states. Section 562.021.4 states, in pertinent part, "When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly." The drafters discussed the intended purpose of this provision in Section 562.021's Comment to 1973 Proposed Code:

> Subsection [4][2] makes it clear that the culpable mental states are "graded", that is, each mental state is included in the higher mental states. This is useful in grading offenses (making it possible to convict for lesser included offenses) and also avoids the argument that something was not done recklessly because it was done knowingly or purposely.

---

[2] When Section 562.021 was originally enacted, this provision was numbered as subsection 3. The 1993 amendment renumbered this provision as subsection 2, and the 1997 amendment renumbered it as subsection 4.

11

Thus, while "recklessly" and "knowingly" are differently-defined mental states, Section 562.021.4 expressly provides that "knowingly" encompasses "recklessly." Stated another way, where the evidence is sufficient to prove that the defendant was aware that his conduct was practically certain to cause a particular result ("knowingly caused"), there is no need for *additional* proof that the defendant consciously disregarded a substantial and unjustifiable risk that a result would follow and that such disregard constituted a gross deviation from the standard of care which a reasonable person would exercise in the situation ("recklessly caused"). Under Section 562.021.4, evidence establishing that the defendant "knowingly" caused a result *automatically* establishes that the defendant "recklessly" caused that result. Consequently, like the offenses in *Jackson* and *Pierce*, it is impossible to commit the greater offense of second-degree domestic assault without necessarily committing the lesser offense of third-degree domestic assault. *See Jackson*, 433 S.W.3d at 404.

The State concedes that, if the third-degree assault instruction had been submitted and the jury had found Roberts guilty of it, evidence showing that he acted knowingly would have supported the conviction for third-degree assault as a matter of law under Section 562.021.4. Nevertheless, the State argues that it is "questionable" whether evidence that Roberts acted knowingly also obligates the circuit court to instruct the jury on a lesser included offense that requires only that he acted recklessly. The State asserts that, if the basis for acquitting on the

12

greater offense is the jury's disbelief of the knowingly evidence, then that same evidence should not then be relied on to provide a basis for convicting on the lesser offense.

A basis for acquitting on the greater offense exists not simply because the jury can disbelieve *all* of the State's evidence on the differential element; rather, the basis for acquitting on the greater offense exists because the jury can disbelieve "all *or any part*" of the State's evidence on that element. *Jackson*, 433 S.W.3d at 399 (emphasis added). The jury could have disbelieved all *or any part* of the evidence that established that Roberts acted knowingly. Thus, instead of inferring from the evidence that Roberts, in intentionally hitting A.A., was aware that his conduct was practically certain to cause A.A. physical injury, the jury could have inferred only that Roberts, in intentionally hitting A.A., consciously disregarded a substantial and unjustifiable risk that his doing so would cause her physical injury and that such disregard constituted a gross deviation from the standard of care which a reasonable person would exercise in the situation. Because the evidence was sufficient to prove that Roberts acted with the higher mental state of knowingly, the evidence was necessarily sufficient, pursuant to Section 562.021.4, to prove that he acted with the lower mental state of recklessly.

We recognize that the Eastern District of this court recently decided a case that supports the State's position. In *State v. Randle*, No. ED 99137, 2014 WL 4980347, at *1-2 (Mo. App. Oct. 7, 2014), the defendant was convicted of

13

second-degree assault for knowingly causing physical injury to the victim by shattering a bottle on the victim's head. The circuit court had refused to give his requested third-degree assault instruction, which would have required the jury to find that he recklessly caused physical injury to the victim. *Id*. at *2-3.

On appeal, the defendant in *Randle* argued that there does not have to be any affirmative evidence to support an instruction for a lesser included offense. *Id*. at *3. To support his argument, the defendant relied on *State v. Pond*, 131 S.W.3d 792 (Mo. banc 2004), a case in which the Supreme Court overruled prior case law that required the defendant to present "'some affirmative evidence of a lack of an essential element of the higher offense which would not only authorize acquittal of the higher but sustain a conviction of the lesser.'" *Pond*, 131 S.W.3d at 794 (quoting *State v. Olson*, 636 S.W.2d 318, 322 (Mo. banc 1982). The Court in *Pond* held that, because the jury may accept or reject any part of the evidence, "[i]f the evidence supports differing conclusions, the judge must instruct on each." *Id*.

A majority of the panel in *Randle* rejected the defendant's argument. The majority acknowledged the Supreme Court's observation in *Jackson* that a lesser included offense instruction is "'nearly universal, *at least where the differential element is one for which the state bears the burden of proof*.'" *Randle*, 2014 WL 4980347 at *3 (quoting *Jackson*, 433 S.W.3d at 399 (emphasis added)). The majority explained, however, that the term "differential element" in *Jackson* refers only "to an additional element that is part of the greater offense that is not an

14

element of the lesser-included offense." *Id*. The majority found that the term "differential element" "does not refer to the different mental intent element that may exist between a greater offense and a lesser-included offense, such as 'knowingly' committed an act versus 'recklessly' committed an act." *Id*. The majority in *Randle* concluded that, where the difference between the greater and the lesser charge is a different mental element, "there needs to be some affirmative evidence to convict on the lesser-included charge in order to mandate an instruction on that lesser-included charge." *Id*. at *4.

In examining the evidence in *Randle*, the majority found that the jury could either believe that the defendant knowingly caused physical injury by shattering the bottle on the victim's head or believe that the defendant did not shatter the bottle on the victim's head and, therefore, committed no crime. *Id*. Because there was no affirmative evidence from which the jury could infer that the defendant recklessly caused physical injury by shattering the bottle on the victim's head, however, the majority concluded that the circuit court did not err in refusing to submit the defendant's proposed third-degree assault instruction. *Id*. In so holding, the majority did not cite or discuss Section 562.021.4's provision that evidence establishing that the defendant acted knowingly also establishes that the defendant acted recklessly.

The dissent in *Randle* did discuss Section 562.021.4. *Randle*, 2014 WL 4980347 at *7 (Mooney, P.J., dissenting). The dissent noted that the State conceded, as it does in our case, that there was sufficient evidence to convict the

15

defendant of third-degree assault because of Section 562.021.4's provision that recklessly is established if knowingly is established. *Randle*, 2014 WL 4980347 at *7. Moreover, the dissent reasoned that, because *Jackson* holds that the jury has "an unfettered right not to infer the presence of a differentiating factual element," the jury should not be denied "the right not to infer the presence of a differentiating mental element." *Id*. (footnotes omitted). The dissent asserted that to hold otherwise would be "to rely on a distinction without a difference." *Id*. at *7 n.2.

We decline to follow the majority opinion in *Randle*.[3] As noted, the majority opinion does not address the impact on the analysis of Section 562.021.4's express provision that evidence of knowingly establishes recklessly. Moreover, the majority's holding that "there needs to be some affirmative evidence" to convict on a lesser included offense with a different mental state appears to run afoul of *Jackson*. In *Jackson*, the Supreme Court was quite clear that the defendant is not required to introduce affirmative evidence, or to even challenge the State's evidence, in order to refute the greater offense *or to support the lesser offense*:

> Now, the Court holds expressly what *Pond* and *Williams* only may have implied: a defendant not only does not need to introduce affirmative evidence, he does not have to "cast doubt" over the state's evidence via cross-examination or explain to the judge or jury precisely how or why the jury can disbelieve that evidence and so acquit him of the greater offense *and convict him of the lesser*. To the extent *Olson* or any other case suggests otherwise, it no longer should be followed.

---

[3] Pursuant to Western District Rule XXXI, this opinion was reviewed and approved by the court *en banc*.

16

*Jackson*, 433 S.W.3d at 401-02 (emphasis added). Instead, the Court in *Jackson* reaffirmed that the jury's prerogative to determine which evidence to accept or reject is, by itself, sufficient to justify giving the lesser included offense instruction:

> [T]he jury's right to disbelieve all or any part of the evidence, and its right to refuse to draw any needed inference, is a sufficient basis in the evidence to justify giving any lesser included offense instruction when the offenses are separated only by one differential element for which the state bears the burden of proof.

*Id*. at 401.[4]

Roberts was entitled to have the jury instructed on the lesser included offense of third-degree domestic assault. Therefore, his second-degree domestic assault conviction is vacated. The victim tampering conviction must also be vacated, because the second-degree assault was the underlying crime for the victim tampering. *See State v. Owens*, 270 S.W.3d 533, 540-42 (Mo. App. 2008). Point I is granted.

### Propriety of Joinder and Denial of Motion to Sever

Because it is likely to recur on remand, we will address Roberts's Point II. In this point, Roberts contends the circuit court erred in joining the domestic assault and victim tampering charges. He further argues that he was substantially prejudiced by the court's failure to sever the offenses, because the jury was likely to consider the evidence of tampering in considering whether he was guilty of domestic assault.

---

[4] The Court in *Jackson* recognized that the effect of its decision "likely will be that lesser included offense instructions will be given virtually every time they are requested" and that "trial courts likely will give such instructions even when *not* requested simply to avoid the possibility of post-conviction claims." *Id*. at 402.

The propriety of joinder is a question of law. *State v. McKinney*, 314 S.W.3d 339, 341 (Mo. banc 2010). "Liberal joinder of criminal offenses is favored." *Id*. Rule 23.05 sets forth when criminal offenses may be joined:

> All offenses that are of the same or similar character or based on two or more acts that are part of the same transaction or on two or more acts or transactions that are connected or that constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts.

Section 545.140.2, RSMo 2000, also provides for joinder of offenses:

> [T]wo or more offenses may be charged in the same indictment or information . . . if the offenses charged . . . are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Roberts asserts that the charges against him should not have been joined because they were not part of the same transaction, a common scheme or plan, or of the same or similar character. Such an argument fails "to give effect to all the provisions for joinder under Rule 23.05 and section 545.140.2." *McKinney*, 314 S.W.3d at 341. Specifically, Roberts ignores that both the rule and the statute permit joinder where offenses are "connected." Offenses can be connected "'by their dependence and relationship to one another.'" *Id*. (quoting *State v. Morrow*, 968 S.W.2d 100, 109 (Mo. banc 1998)).

Roberts's crimes were plainly connected. It was while Roberts was in jail, charged with domestic assault, that he tampered with the victim of that domestic assault and attempted to persuade her not to testify against him at the domestic assault trial. Roberts's tampering would not have occurred but for the domestic

18

assault, and his tampering tended to show his consciousness of guilt of the domestic assault.[5] The crime of victim tampering was dependent upon and related to the crime of domestic assault. Therefore, the crimes were connected, and joinder was proper. *See id*. at 341-42 (rejecting the defendant's claim that the charge for his attempted escape from jail nine weeks after he committed two murders was improperly joined with the murder charges).

"Even where joinder is proper, however, severance may be necessary to prevent substantial prejudice to the defendant that could result if the charges are not tried separately." *Id*. at 342. The circuit court has discretion to decide whether to grant a defendant's motion to sever, and we will reverse the court's decision to deny severance only if the court abused its discretion and there was a clear showing of prejudice. *Id*.

To determine whether severance is required, the court is to consider "'the number of offenses joined, the complexity of the evidence, and the likelihood that the jury can distinguish the evidence and apply it, without confusion, to each offense.'" *Id*. (quoting *Morrow*, 968 S.W.2d at 109). "Severance is proper only after the defendant 'makes a particularized showing of substantial prejudice if the offense is not tried separately' and after the 'court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.'" *Id*.

---

[5] "'Conduct and declarations of a defendant that are relevant to show a consciousness of guilt or a desire to conceal the offense are admissible because they tend to establish the defendant's guilt of the charged crime.'" *State v. Cannon*, 215 S.W.3d 295, 301 (Mo. App. 2007) (quoting *State v. Barton*, 998 S.W.2d 19, 28 (Mo. banc 1999)). Thus, evidence that the defendant tampered with a witness to the crime has been found admissible in the defendant's trial for that crime. *See, e.g., Cannon*, 215 S.W.3d at 301, and *State v. White*, 870 S.W.2d 869, 875 (Mo. App. 1993).

19

(quoting Rule 24.07). "Any prejudice from joinder may be overcome where the evidence with regard to each crime is sufficiently simple and distinct to mitigate the risks of joinder." *Id*. (internal quotation marks and citations omitted).

In this case, the evidence of the two offenses was simple. It would not have been difficult for the jury to consider evidence of each crime and make an appropriate determination of Roberts's guilt. Moreover, there was no risk that the jury improperly considered evidence of "other crimes not properly related to the cause on trial," as Roberts asserts. To the contrary, because Roberts's crimes were so closely connected, it was entirely proper, and even necessary, for the jury to consider both crimes.

With regard to the victim tampering charge, the jury necessarily had to consider whether Roberts had committed domestic assault in the second degree because an element of victim tampering was that A.A. "was the victim of the crime of domestic assault in the second degree that was charged as a felony on or about June 3, 2012." Thus, if the charge of victim tampering had not been joined with the charge of domestic assault in the second degree, the jury in the tampering case would still have heard all of the evidence pertaining to the domestic assault charge. Similarly, as noted *supra*, evidence of the victim tampering would have been relevant and admissible in a separate trial for domestic assault because the victim tampering showed Roberts's consciousness of guilt and legitimately tended to prove his guilt on the domestic assault charge.

20

Because evidence of the other crime would have been admissible in separate trials for each crime, Roberts cannot claim that he was unfairly prejudiced by a single trial. *State v. Morant*, 758 S.W.2d 110, 115-116 (Mo. App. 1988). Joinder was appropriate, and the court did not abuse its discretion in denying severance. Point II is denied.

## CONCLUSION

Roberts's convictions for domestic assault in the second degree and victim tampering are vacated, and the case is remanded to the circuit court for further proceedings.

_____

LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

21